PRICE *et al., Appellants and Respondents*, v. COURTNEY *et al., Respondents and Appellants*.

1. **Powers.** A naked power to sell and convey property does not include the power to mortgage it.

2. **Lien : SUBROGATION.** One loaning money to another, to remove a lien on land, is not thereby subrogated to the rights of the lienor against the land.

*Appeal from Pettis Circuit Court.*—HON. JNO. P. STROTHER, Judge.

REVERSED.

*W. S. Shirk* and *Draffen & Williams* for Courtney *et al.*

(1) The largest discretionary power as to the management of the property was conferred upon Courtney by the will. If a power to mortgage can be conferred by general terms, the will in this case would seem to be sufficient for that purpose, for the will declares that Courtney shall have the same power as the testator himself would have if living. Hill on Trustees, secs. 355, 476; 1 Jones on Mortgages, sec. 129; *Starr v. Moulton*, 15 C. L. J. 189; *Carter v. Bank*, 36 Amer. 338. (2) The plaintiffs having received the benefit of the money cannot be granted equitable relief except upon

condition that they do equity themselves. *Valle's Heirs v. Fleming's Heirs*, 29 Mo. 152; *Shroyer v. Nickell*, 55 Mo. 264; *Jones v. Manly*, 58 Mo. 559; *Schafer v. Camsey*, 76 Mo. 365; *Bagby v. Emerson*, 79 Mo. 139; *Gilbert v. Gilbert et al.*, 39 Iowa, 657; *Levy v. Martin*, 48 Wis. 198; *McGee v. Wallis*, 34 Am. Rep. 484; *Everston v. Central Bank of Kansas*, Sup. Ct. Kan. 1885, not reported.

*G. P. B. Jackson* for Price *et al.*; for brief see next preceding case.

RAY, J.—By a stipulation filed in the above entitled causes it is agreed that they are cross-appeals and belong to the same cause, and are submitted on the same briefs and abstracts. The object of their suit is to have declared null and void a deed of trust on certain lands, and the note thereby secured which were executed to Mentor and D. W. Thomson. This litigation arose in regard to the will of H. M. Price and the powers therein conferred on Courtney, the executor, trustee, guardian, and curator therein named.

The provisions of said will, so far as material to the present controversy, are in these words:

"*Second.* I do hereby devise and bequeath to Peter Courtney, of Pettis county, all my estate, money and property, real and personal, wherever situate, all claims and demands due, and all and every kind, and interest I may have in all property of every kind, in trust, for the purposes hereinafter stated and set forth. It is my desire, that upon my death, the said Courtney qualify himself according to law, and enter upon the administration of my estate, and I do hereby name and appoint him, the said Peter Courtney, as executor of this, my last will and testament. That as soon after my death as possible, that he take full and complete charge of my estate. It is my desire that said Courtney manage and

control my business, and all of my unsettled matters, as he deems best, for my children; that he invest my money or loan it out, or otherwise manage or control it as nearly as I might do it, were I living, in whatever manner, in his judgment, may be to the interests of my children. And I do hereby empower him, the said Courtney, to grant, bargain, and sell and convey any real estate I may own at the time of my death, at such times and for such price and in such manner as he deems to my best interest; and, also, to invest my money in real estate, stocks or bonds, or whatever else he deems advantageous, with full power to buy and purchase, and to sell, convey and transfer the same. It is my desire that in and about the entire management and control of my said property, that the said Courtney shall have full power to do with the same as I would were I living; and I desire said Courtney to have, keep and preserve said property, and all the increase thereof, as trustee for my children, and to be kept and managed by him, for them, until such time as, by the terms of the will, he is required to pay the same over to them. I desire him, the said Courtney, also to act in the capacity of such trustee, as the guardian, as well as the curator, of my children, and out of my estate to pay all the expenses necessary to be incurred in rearing and educating them, so that each shall receive from my estate a support until they marry or attain their majority, as well as a good education, and so that, in the final settlement, all may share the estate equally, except as hereinafter stated."

After hearing the evidence in the cause, the substance of which will accompany this opinion, the court made a finding, partly in favor of plaintiffs, and partly in favor of the defendants, finding that the will of H. M. Price gave no power to Courtney to borrow money or execute incumbrances upon the land of the estate or heirs of H. M. Price; and that the deed of trust from Courtney to Mentor Thomson, for the use of D. W. Thomson, was

null and void, and executed without authority; and, also, finding that, of the money represented by the note to D. W. Thompson, a portion was used by Courtney to pay taxes on land held in trust by him for plaintiffs, as follows: $137.35 on land in Bates county; $232.73 on land in Johnson county, and $88.71 on land in Pettis county, not the land in controversy, and that the defendant, D. W. Thomson, is entitled to enforce payment out of the land in controversy, of the sum of $459.29, so paid for taxes, and that said sum, with interest and costs of this suit, should be a lien on the land in controversy, and that said land should be sold to satisfy the same, and judgment was entered accordingly.

From this decree both parties appeal, the heirs of Price, the plaintiffs, because any lien was decreed against their land to pay any money borrowed by Courtney from D. W. Thomson, and to secure which he had executed the deed of trust to Mentor Thomson, on the land in controversy. The defendants appeal from the decree because they claim that the deed of trust should not have been set aside and declared null and void, but that the entire decree should have been in their favor. So that these two cross-appeals present for determination, two questions: 1. Whether the will conferred power on Courtney to make a valid deed of trust on the land of his wards. 2. Whether, if no such power was conferred as aforesaid, the decree was authorized which gave a lien on the lands of the heirs, for money which Courtney had borrowed of Thomson, and ordered a sale of such lands in discharge of such lien. These questions will be considered in their proper order, because it is apparent that if Courtney had the power bestowed upon him by the will, to encumber the estate by mortgage or otherwise, that the entire decree, instead of only a portion thereof, should have been in favor of the defendants.

Did Courtney then have such power conferred on him by the will of his testator? After attentively con-

sidering the terms of the will, and examining the authorities on the subject, we have arrived at the conclusion that no such power was conferred. It is to be observed of the will under consideration, that it nowhere, in express terms, confers any power on Courtney to mortgage or otherwise encumber the property devised to him by his testator. Nor do we think such power is to be inferred by the exercise of any reasonable implication. The power conferred by the will, whatever its extent, was a mere naked power. *Waldron v. McComb*, 1 Hill, 3. A devise that executors or others may sell is always thus construed. 1 Chance on Powers, 52–3 (Lond. Ed. 1831). And the degree of strictness with which such powers are construed is a very familiar rule to the profession.

This subject will be found learnedly and elaborately discussed in the case of *Bloomer v. Waldron*, 3 Hill, 361, by that eminent jurist, Judge Cowen. The action was ejectment, and the question was whether a sale under a mortgage, made professedly in execution of a power assumed to be conferred by the will, passed title or not. The will was very much such an one as that now before us ; it devised certain land to the testator's widow during her widowhood for the support of herself, three daughters, and one P, and in case of her death, etc., to P, during his life, for the support of himself and the daughters, with ·emainder to the daughters in fee ; it also gave to the widow and to P, while she remained single, and to P after her death or re-marriage, full power and authority to sell and convey all, or any part of the estate, provided A B should consent in writing ; the money arising from such sales to be invested and secured for the purposes of the will, as A B should direct. The widow mortgaged the land in fee to raise money for the support of the persons named in the will. A sale of the land took place by reason of an equitable foreclosure. The mortgage contained the written consent of A B, and professed to be given under the power conferred by the will, and after

the death of the widow, P, with the view of confirming the title of the purchaser, executed to him for a nominal consideration, a deed in fee for the land thus sold, and this deed also contained the written consent of A B, and professed to be executed under the power conferred by the will. But it was held that the whole transaction was void; that no title passed, because, while there was a power to "sell and convey," there was no power to mortgage the land devised.

In delivering the opinion in that case, Judge Cowen, among other things, said: "Let us then first consider the language of the power which is simply to *sell and convey*. It was admitted at the bar that these words do not in themselves, as a general rule, confer the power to mortgage. That they do not, is admitted in books of the highest authority (1 Sugd. on Powers, 538 (6 Lond. Ed.); 1 Pow. on Mort. 61 (Rand's Ed.) and note *i; 3 Id.* 1033, note *a*), and insisted on at large by others. 2 Chance on Pow. 388 (Lond. Ed. of 1831); though the contrary has sometimes been asserted without sufficient qualification. 1 Am. from 3d Lond. Ed. of Sugd. on Powers, 478; Savage, C. J., in *Williams v. Woodward*, 2 Wend. 492; Lord Macclesfield C., in *Mills v. Banks*, 3 P. Wms. 9. A man leaves with his neighbor a power of attorney to sell and convey his farm; who would ever suppose, had it not been for some random expression in the books, that the attorney could give a mortgage, which, with us especially, is but a pledge to secure money loaned? A man tells another to sell his horse; who would say that he could pledge the horse for any sum he might borrow? Such a construction would be absurd; and the most we can say is, that when the power is to sell, and something is added over and above, showing that the power of sale is not to be taken in its primary sense, but means a power to mortgage, there the donee may act accordingly. The principal may always make his own vocabulary. He may say, I authorize a sale, by which word I intend a

mortgage. A power to sell and raise a sum of money has been said to evince that intent. This, however, is put by Sugden with a *semble*, and rests entirely on the dictum of Lord Macclesfield in *Mills v. Banks*. All the books are traceable to that, and no other authority was mentioned at the bar. Yet, in the very same opinion he says: 'I cannot but think it to have been a due and just resolution in the case of *Butler v. Dunscomb*, that all trusts of terms directing the methods of raising money imply a negative, viz.: that the money should be raised by the methods prescribed, and not otherwise.' Mr. Chance insists that the case of *Mills v. Banks*, is misun‐derstood, when cited to show that a power of sale, even to raise a specific sum of money, will authorize a mort‐gage. 2 Chance on Pow. 388 (Lond. Ed. 1831). When a man directs a sale of his land, whether his object be to raise money or not, he means to put it in market for what it will fetch at the time, and avoid the fluctuation of prices. An absolute title and delivery of possession will fetch more than a mere pledge; at any rate there is a substantial difference between raising money by mort‐gage and sale, and it is enough to say that a power to raise it by one of these methods puts a negative on the other."

The same idea pervades the text books. Thus in Perry on Trusts, it is said: "A trust with a power of sale, out and out, will not authorize a mortgage; and a trust for sale, with nothing to negative the settler's in‐tention to convert the estate absolutely, will not authorize the trustees to execute a mortgage." Secs. 768-9, and cases cited; 1 Jones on Mortgages, sec. 129. In *Taylor v. Galloway*, 1 Ohio, 232, it is said: "The power must be strictly pursued, and must be executed according to the manifest intent of the testator. The power is to sell; and the sale must be for money, and the trustees are not authorized to exchange or *incumber* the land, or to dis‐pose of any part of it to perfect a title to the residue."

In *Mills v. Banks*, 3 P. Williams, 9, it was decided that, "a power to *sell and raise a sum of money* implies, it seems, a power to mortgage, which is a conditional sale." "Although," says Mr. Sugden, in speaking of that case, "this cannot be treated as a general rule." 1 Sugden on Pow. 513. That case was followed in *Ball v. Harris*, 4 Myl. & Cr. 267, but the principle of it was denied by Lord Langdale in *Haldenby v. Spofforth*, 1 Beav. 391, and by Mr. Sugden, then Lord St. Leonard, in *Stroughill v. Anstey*, 1 DeG., M. & G. 645, holding that the general rule is that a power of sale does not authorize a mortgage, and requiring as authority for a mortgage, that the power of sale should have been given as a means of raising a particular charge, and that the estate was devised subject to the charge. This view was adopted by Sir J. Romilly, Master of the Rolls, in *Devaynes v. Robinson*, 3 Jur. (N. S.) 77; s. c., 24 Beav. 86.

These cases, with *Bloomer v. Waldron, supra*, are quoted and approved in *Ferry v. Laible*, 31 N. J. Eq. 567, 574-5, and to the same effect are *Page v. Cooper*, 16 Beav. 396; *Wood v. Goodridge*, 6 Cush. 117; *Morris v. Watson*, 15 Minn. 212; *Coutant v. Servoss*, 3 Barb. 128; *Tyson v. Latrobe*, 42 Md. 325; *Hubbard v. German Catholic Congregation*, 34 Iowa, 31. In *Hoyt v. Jacques*, 129 Mass. 286, the court uses this language: "The two transactions of a sale and a mortgage are essentially different; a power to sell implies that the attorney is to receive, for the benefit of the principal, a fair and adequate price for the land; a power to mortgage involves a right in the attorney to convey the land for a less sum, so that the whole estate may be taken in a foreclosure for only a part of its value. So, under a will, a trust with a power to sell, *prima facie*, imports a power to sell 'out and out,' and will not authorize a mortgage, unless there is something in the will to show that a mortgage was within the intention of the testator."

The above quotations fully sustain the position we have heretofore announced, that no power was bestowed by the will on Courtney to mortgage or otherwise encumber the property devised by the will, and hence that the deed of trust executed by him was void. Nor is that conclusion in the least affected by the words in the latter portion of the will, to-wit: "It is my desire that in and about the entire management of my said property, that the said Courtney should have the full power to do with the same as I would, were I living." These words, though very broad, are not to be construed as any additional grant of power, but as only referring to the power of sale previously granted, and declaring that such power might be as fully exercised by Courtney as the testator himself could exercise it, were he living.

We pass now to consider the question of the lien, and that portion of the decree which sought to enforce it. The money loaned to Courtney by Thomson, was not loaned for any special purpose, nor for the purpose of removing any lien for taxes on the lands of the wards, nor did Thomson understand that it was to be so applied, nor was it thus applied. But even had it been loaned for that specific purpose and applied in accordance therewith, such loaning and such application would have created no equity of subrogation or otherwise, in favor of him who loaned the money to remove the lien. This point was expressly so decided in *Wooldridge v. Scott*, 69 Mo. 669. It is true that was a case where the money was loaned in order to remove a vendor's lien, but this cannot alter the principle, which must underlie all similar transactions.

It may be remarked that at the present term of this court, in the case of *Price et al. v. Estill et al., ante*, p. 378, in an opinion delivered by Norton, J., a lien attempted to be created by Courtney in similar circumstances to those in the case at bar, was held to have no existence. That case, in all essential points, so far as concerns any

lien is like the present one, and that case on that point is, therefore, decisive of this.

Owing to the disposition to be made of this cause, it is unnecessary to comment on the propriety of the decree enforcing a lien on the land in controversy for the payment of taxes due on other land. In so far as the decree of the court below declared and adjudged the deed of trust made by Courtney null and void, it is affirmed; and in so far as that decree adjudged that a lien existed and should be enforced against the lands described in the deed of trust, it is reversed and the cause is remanded to be proceeded with in conformity to this opinion. All concur.