HARBISON, *Administrator*, *Appellant*, v. JAMES *et al.*

1. **Will, Construction of:** LIFE ESTATE WITH POWER TO USE PRINCIPAL: REMAINDER. A will which gives to the testator's widow all his property, real and personal, with power to sell and reinvest, as she may desire, any part of the same for her separate use and benefit, and any portion of the estate remaining at her death to his three daughters, creates in the widow a life estate, with power to use the principal, if necessary, for her support, and the remainder, if any, at her death, goes to the daughters.

2. ———: ———: ASSIGNMENT OF NOTE BY WIDOW: BURIAL EXPENSES. Under the will, the widow could make a valid assignment of a note secured by mortgage belonging to the estate, as collateral security for money necessarily borrowed by her for her support; and in an equitable proceeding after her death to determine the rights of the assignee of the note, the devisees in remainder of the testator, and the heirs at law of the widow, the assignee will be allowed to retain from the proceeds of the note the amount borrowed from her with interest thereon, and also the expenses of the widow's last sickness and burial, paid by the assignee.

*Appeal from Jackson Special Law and Equity Court.*
HON. R. E. COWAN, Judge.

REVERSED.

*John S. Harbison* and *Frank Titus* for appellant.

(1) Complainant's exceptions to the testimony contained in the depositions of the witnesses for defendant Anderson should have been sustained, and the evidence excluded, on the grounds set out in the complainant's motions. (2) Complainant herein is the proper party to bring suit for the estate of his testator. R. S., sec. 3463; 43 Ind. 203. (3) The words, "wish" and "desire," used by B. M. Hall in his will, manifest the intention of the testator, and, with the other terms used by him, gave his widow, Mary F. Hall, but a life estate, and

| | |
|---|---|
| 90 | 411 |
| 100 | 36 |
| 90 | 411 |
| 101 | 292 |
| 90 | 411 |
| 118 | 575 |
| 120 | 414 |
| 90 | 411 |
| 126 | 368 |
| 90 | 411 |
| 135 | 403 |
| 90 | 411 |
| 141 | 604 |
| 90 | 411 |
| 148 | 553 |
| 148 | 573 |
| 149 | 344 |
| 90 | 411 |
| f152 | 501 |

made her trustee for the beneficiaries named in said will. This is established, complainant contends, by an overwhelming current of authority. Perry on Trusts, secs. 112, 114 ; Hill on Trustees [4 Am. Ed.] 73 ; 2 Redfield on Wills, 729 ; 1 Redfield on Wills, p. 679, sec. 21 ; 2 Sugden on Powers [Ed. 1856] 165 ; *Foote v. Sanders*, 72 Mo. 616 ; *King v. Matthews*, 69 Mo. 520 ; 14 Mo. 391 ; *Wead v. Gray*, 8 Mo. App. 515 ; *Anderson v. Hall's Adm'r*, 80 Ky. 91 ; *Carr v. Estill*, 16 B. Mon. 3, 12 ; *Collins v. Carlisle's Heirs*, 7 B. Mon. 14 ; *Arnold's Heirs v. Arnold's Heirs*, 11 B. Mon. 86, 87. See, also, *Smith v. Bell*, 6 Pet. 68 ; *Brant v. Mining Co.*, 93 U. S. 326 ; *Wilson v. Moore*, 2 M. & K. 127 ; *Malin v. Keighley*, 2 Vesey, Jr., 333 ; 5 Maddox, 123 ; *Wright v. Atkins*, 17 Vesey, 255 ; 19 Beavan, 298, 478 ; *Ayer v. Ayer*, 128 Mass. 575 ; *Gifford v. Choate*, 100 Mass. 346 ; *Hall v. Otis*, 71 Maine ; *Fox v. Rumery et al.*, 68 Maine, 121 ; *Pickering v. Langdon*, 22 Me. 413 ; *Burleigh v. Clough*, 52 N. H. 267 ; *Brasher v. Marsh*, 15 Ohio St. [N. S.] 103. (4) The words, "portion of my estate remaining undisposed of," used in the devise to Mary F. Hall, mean, and can be taken only to mean, in connection with the context of the will, a life estate in the first taker, and that she holds in trust for the other legatees named therein. Authorities *supra ; Burt v. Herron's Heirs*, 66 Pa. St. 400 ; *Coates' Appeal*, 2 Barr [Pa. St.] 129, 136 ; *Read v. Watkins*, 16 Cent. Law Jour. 406 ; *Downey v. Bissell*, 4 Fed. Rep. 55 ; *Dehoney v. Taylor*, 79 Ky. 79 ; *Giles v. Little*, 104 U. S. 291 ; *Henderson v. Blackburn*, Sup. Ct. Ill. [1882], 15 Rep. 142. (5) Defendant Anderson claims the fund in controversy by virtue of a pledge or mortgage from Mary F. Hall, the tenant for life. That a power "to sell and reinvest," given said Mary by the will of her husband, gave her no power to mortgage the estate, is believed to be universally held by the latest and best authorities. *Kinney v. Matthews*, 69 Mo. 520 ; *Turner v. Timberlake*, 53 Mo.

371; *Hoyt v. Jacques* [Mass. 1880], 10 Reporter, 636; *Downey v. Bissell*, 4 Fed. Rep. 55; 28 Alb. Law Jour. 436; *Wilson v. Ins. Co.*, 16 Reporter, 111. (6) The defendant, Anderson, claims under conveyance from Mary F. Hall. This conveyance contains no reference to the will of the testator, and when, as in this case, she being a donee under the will, and having an interest, only her interest could pass by such conveyance. *Turner v. Timberlake*, 53 Mo. 378; *Pease v. Iron Co.*, 49 Mo. 124; *Owen v. Switzer*, 51 Mo. 322; 2 Story's Eq., [12 Ed.] sec. 1062, note *a*. The taking of the James note and deed of trust in the name of Mary F. Hall as payee enured to the benefit of the estate. *Fosbrooke v. Bolgy*, 1 M. & K. 226; 9 Rep. 633. The executrix could only bind herself by any contract she may have made with Mrs. Anderson. She could not bind or give away the assets of her testator. 1 Parsons on Notes and Bills, 161. Nor is complainant estopped by any such acts of the devisee for life from showing the truth. *Brant v. Coal Co.*, 3 Otto, 326. (7) If defendant, Kate C. Anderson, had the means of acquiring a knowledge of Mary F. Hall's title to the property in her hands coming from decedent's estate, or if said Anderson knew the facts concerning the same, she takes no title. *Duncan v. Jaudon*, 15 Wall. 155; *Smith v. Ayer*, 9 Rep. 633. And that defendant Anderson had such knowledge is proved as well by her testimony as by the fact that she was an attesting witness to the will of said B. M. Hall, her name then being Kate C. Huffman. Whatever is enough to excite attention, put on guard, or call for inquiry, is notice of everything to which such inquiry might lead. *Kitchen v. Railroad*, 69 Mo. 265; *Kennedy v. Green*, 1 Myl. & K. 722; *Cox v. Milner*, 23 Ill. 476; *Ringgold v. Waggoner*, 14 Ark. 69; *Slattery v. Rafferty*, 10 Cent. Law Jour. 313, and note thereto; 9 Rep. 633; *Bank v. Lange*, 7 Rep. 589; Sugden on Vendors, ch. 17, sec. 2; see, also, *Trefts v. King*, 18 Pa. St. 157; 1 Daniel on

Neg. Inst. [1 Ed.] sec. 174; 1 Parsons on Notes & Bills, 175, 183; Edwards on Bills & Notes [2 Ed.] side p. 689; *Knouf v. Thompson*, 4 Harris [Pa.] 363; 9 Rep. 681; 72 Mo. 314; 70 Mo. 580; 69 Mo. 122; 62 Mo. 226; 46 Mo. 147; 44 Mo. 465. (8) Mrs. Mary F. Hall was a trustee under the will, and had no right to pledge the property, which the testimony shows she held but in trust, and defendant, Anderson, having due and sufficient notice of such facts, is bound by all the legal consequences resulting. Taney's [Cir. Ct.] 310; *Duncan v. Jaudon*, 15 Wall. 165; 100 Mass. 382; *Smith v. Ayer*, 9 Rep. 633; *Fisher v. Brown*, 104 Mass. 259; *Gaston v. Bank*, 29 N. J. Eq. 98; *Sprague v. Cocheco Co.*, 10 Blatch. 173; *Bank v. Duncan*, 8 Blatch. 430; *Porter v. Parks*, 49 N. Y. 564; *Central Nat'l Bank v. Ins. Co.*, [Sup. Ct. U. S.] 13 Cent. L. J. 410. Though the pledgee receives the legal title the general property is in the pledgeor. *Garlick v. James*, 12 Johns. 148; 5 Blackf. 320; *Building and Loan Association v. Conover*, 14 N. J. Eq. 219. Defendant, Anderson, has no equitable status in this case, and has no rights herein, the death of her pledgeor before she had taken any steps to enforce against such pledgeor her supposed security, destroying any right as against complainant herein. *Wilson v. Little*, 2 N. Y. [2 Comstock] 443; *Porter v. Parks*, 49 N. Y. 564; *Sitgreaves v. Bank*, 49 Pa. St. 359. An assignment of note of testator for the private debt of an executor is a fraud on the estate of the deceased, and passes no property to such assignee with notice, even though the latter paid value. 11 S. & R. [Pa.] 377, 388; 2 Sm. & M. 687, 696; 7 Sm. & M. 498; 5 Md. 219; 4 How. [Miss.] 237; *Smith v. Ayer*, 9 Reporter, 633; 1 Parsons on Notes & Bills, 158; 9 Cow. 320. The assets of the estate may be followed into whatsoever hand they may be found by complainant. 1 Roper on Legacies, 439, 456; 2 Redf. on Wills, 559; 2 Vern. 616; 4 Madd. 332, 359.

*James F. Mister* for respondents, Kate C. Anderson, and administrator of Mary F. Hall.

(1) The will devises the property to Mary F. Hall out and out. Even where there is a devise expressly stated to be for life, with the power to sell and reinvest, and a further devise of the estate remaining undisposed of, any disposition of the estate during life would be good, and there could be no claim by the subsequent devisees beyond what should remain undisposed of at the death of the first devisee. On the point of the valid and effectual exercise of this power of disposition, the case of *Hazel v. Hagan,* 47 Mo. 277, seems to be conclusive. *Bryant v. Christian,* 58 Mo. 98; *Turner v. Timberlake,* 53 Mo. 371; *Harris v. Knapp,* 21 Pick. 413; *Boyer v. Allen,* 76 Mo. 498; 1 Jarman on Wills, *879, note 2, and cases; *Downie v. Downie,* 9 Bissell, 353; *Lewis v. Palmer,* 46 Conn. 454. (2) Here there is a devise of the entire estate, with express and implied power of sale, and this will pass a fee, unless, by express words, a life estate only is made to vest. *Hazel v. Hagan,* 47 Mo. 277; *Green v. Sutton,* 50 Mo. 186. The devise over in such case is void. *Green v. Sutton, supra;* Redfield on Wills [3 Ed.] part 2, p. 659, and cases cited; *Boyer v. Allen,* 76 Mo. 498; *Stewart v. Walker,* 72 Me. 145; *Jones v. Bacon,* 68 Me. 34; *Hall v. Preble,* 68 Me. 100; *Roseboom v. Roseboom,* 81 N. Y. 356; *Campbell v. Beaumont,* 91 N. Y. 464; *Sears v. Cunningham,* 122 Mass. 538; *Pendleton v. Bell,* 32 Mo. 100; *Jecko, Trustee, v. Taussig,* 45 Mo. 167; *Parnell v. Parnell,* L. R. 9 Ch. div. 96; *Ramsdell v. Ramsdell,* 21 Me. 288; *Musselman Estate,* 39 Pa. St. 469; *Williams v. Parker,* 84 N. C. 90; *Wharton v. Moragne,* 62 Ala. 201; *Davis v. Boggs,* 20 Ohio St. 550; *State ex rel. Haines v. Talson,* 73 Mo. 320; *Allen v. Claybrook,* 58 Mo. 131; *Campbell v. Jones,* 65 Mo. 439. (3) Mrs. Hall

has made no other disposition of the property than was contemplated by the will. She contracted the debt fairly and legitimately, and for her own comfort and support. If she had sold or exhausted the whole estate it would have been a valid exercise of the power conferred upon her by the will. *Turner v. Timberlake*, 53 Mo. 371; *Carr v. Dings*, 58 Mo. 400; *Hazen v. Hagan*, 47 Mo. 277; *Owen v. Ellis*, 64 Mo. 77; *Campbell v. Jones*, 65 Mo. 439; *Boyer v. Allen*, 76 Mo. 498; *Harris v. Knapp*, 21 Pick. [Mass.] 413; *Paine v. Barnes*, 100 Mass. 470; *Dodge et ux. v. Moore*, 100 Mass. 335; *Gifford v. Choate*, 100 Mass. 343; *Hale v. Marsh*, 100 Mass. 468; *Stuart v. Walker*, 72 Me. 145; *Copeland v. Barron*, 72 Me. 206; *Burleigh v. Clough*, 52 N. H. 267; *French v. Hutch*, 28 N. H. 331; *Jackson v. Robbins*, 16 Johns. [N. Y.] 537; *Roseboom v. Roseboom*, 81 N. Y. 356; *Downie v. Downie*, 9 Bissell [C. C. R. U. S.] 353; *Lillard v. Robinson*, 3 Littell [Ky.] 415; *Dorsey v. Dorsey*, 9 Md. 31; *Lewis v. Palmer*, 46 Conn. 454. The following are the Missouri cases bearing on the points involved in this case: *Gregory v. Cowgill*, 19 Mo. 415; *Foote v. Saunders*, 72 Mo. 616; *Boyer v. Allen*, 76 Mo. 498; *Hazell v. Hagan*, 47 Mo. 277; *Turner v. Timberlake*, 53 Mo. 371; *Bryant v. Christian*, 58 Mo. 98; *Greenet v. Sutton*, 50 Mo. 186; *Pendleton v. Bell*, 32 Mo. 100; *Jecko v. Taussig*, 45 Mo. 167. (4) In construing a will, all of its different parts which refer to the same subject matter must be examined, and, if possible, by giving each clause and part its proper force, the intention of the testator be ascertained; and when the intention is arrived at, the will must be so construed as to carry out that intention. This is the universal rule. *Gaines v. Fender*, 57 Mo. 342; *Carr v. Dings*, 58 Mo. 400; *Smith v. Hutchinson*, 61 Mo. 87; *Allison, Ex'r, v. Chaney et al.*, 53 Mo. 279; *Owen v. Ellis*, 64 Mo. 77; *Carter v. Alexander*, 71 Mo. 585; 1 Redfield Law of Wills [1 Ed.] 433, 434; *Turner v. Timberlake*, 53 Mo.

375; *Roseboom v. Roseboom*, 81 N. Y. 356; 1 Jarman on Wills [5 Ed.] *873-*878, and note; *Davis et al. v. Boggs et al.*, 20 Ohio St. 550, 556. (5) The debts incurred for last sickness and funeral expenses cannot be adjusted in this suit. (6) The plaintiff, administrator *de bonis non* of B. M. Hall, has nothing to do with this fund. The suit against James is unwarranted and should be dismissed, and the suit against the administrator of Mary F. Hall should also be dismissed; although he is a proper party to this suit for the purpose of protecting her interests in this suit, and that of her assignee, he is not amenable to the suit of the plaintiff in this way. *McCabe v. Lewis*, 79 Mo. 296; *Lewis v. McCabe*, 76 Mo. 307; *Hagthorp v. Hook*, 1 Gill & J. [Md.] 270; *Coleman v. McMendo*, 5 Rand. [Va.] 51.

RAY, J. — This case is before us on appeal from the special law and equity court of Jackson county. The material facts of the case, as we gather from the record, will appear in the progress of this opinion. Bartlett M. Hall, a citizen and resident of the state of Kentucky, died in that state somewhere between February, 1869, and September, 1870, leaving his wife and several children surviving him. He had been twice married, but left no children by his last wife. Shortly before his death he made and published his last will and testament, as follows :

"1. I desire all my just debts to be paid.

"2. I give and bequeath to my beloved wife, Mary F. Hall, all my property, including real and personal of any and every description whatever, giving her the right to sell and reinvest, as she may desire, any part of the same for her separate use and benefit, and at her death I desire that any portion of my estate remaining undisposed of shall go to my three daughters, Mary Davis, Annie Harbison, and Amelia Wilson.

VOL. 90—27

"3.   I have given to my son, William Hall, and my daughter, Velinda Nuckels, more than I am able to give the rest of my children, therefore, I give to them nothing more.

"4.   I have also given to Mary Davis and Annie Harbison more than I have to my daughter, Amelia Wilson, and after the death of my wife, Mary F. Hall, I wish Amelia Wilson to be made equal; and so with each of the other two, Mary Davis and Annie Harbison, I desire that they should come in for their proportion equally, after what they have already received be counted to them and taken into consideration; my object being to let each of these three daughters, Mary, Annie, and Amelia, share alike, and get all my estate remaining after the death of my wife, and after each and all of them has accounted for the portion already received.

"5.   I desire that my wife, Mary F. Hall, shall qualify as my executrix."

The will was duly probated in the proper court in said state, and his wife, who was appointed executrix, qualified as such, and entered upon the discharge of her duties thereunder.

The most valuable part of the testator's estate consisted of certain real estate in Shelby county, of that state.   These lands were sold by the executrix, and after applying the proceeds to the payment of his debts, there remained in her hands somewhere between $5,000 and $7,000, as variously estimated by different witnesses. After considering all the evidence on this point we con clude that it did not exceed the sum of $5,000 or $5,300, so far as this record shows.

The widow, it seems, had no property except such as she derived under her husband's will, and what she borrowed from her sister, Mrs. Kate C. Anderson, as hereinafter stated.

Some $2,000 of the money so received from the testator's estate the widow invested in certain promissory

notes, on one Merriweather, of Louisville, Kentucky, secured by mortgage on real estate in that city ; and upon the bankruptcy of said Merriweather, and in order to save the investment, she purchased the property at the assignee's sale in bankruptcy, at the price of $3,000, and received a credit on said notes for the sum of $1,833.26, and a deed for the property. In order to enable her to make the purchase, she borrowed of her sister, Mrs. Anderson, eight hundred dollars, and, to secure the same, executed her note and mortgage on the property so purchased, and gave her note for the balance of the purchase money. And thus this investment stood at the time of her death, and, so far as this record shows, so remains outstanding, unless it has been recovered by the children and devisees in the testator's will. The only amount shown by the record to have been realized by Mrs. Hall on this investment is the sum of two hundred and fifty dollars, paid her by the assignee in bankruptcy, on account of interest thereon.

It appears also that some $2,500, or more, of the proceeds of said estate was for a time loaned by the widow to Woolfolk & Company, of Louisville, Kentucky (but at what rate of interest, or whether any was collected, does not affirmatively appear), and was subsequently brought with her to Kansas City, Missouri, in the fall of 1875, and, together with eleven hundred dollars borrowed from the defendant, Mrs. Anderson, she invested in a loan to the defendant, J. Crawford James, and took from him and his wife a promissory note in the sum of $3,750, bearing date September 29, 1875, due and payable in twelve months at ten per cent. interest, payable semi-annually. This note was also secured by a deed of trust on certain real estate in said Kansas City, where the defendant, James, resides.

On the twenty-third of June, 1879, at Fort Wayne, Indiana, this note was indorsed and sold and transferred by the said Mary F. Hall to the defendant, Kate C.

Anderson, by assignment in writing, reciting, among other things, that said sale and transfer was for value received, and that the interest on said note was paid to March 29, 1879, and that six hundred and fifty dollars of the principal had also been paid, leaving at that date due and unpaid the sum of $3,100, and that the transfer of said note was made for the sole purpose of securing the said Kate C. Anderson for the sum of $2,500, which she, the said Hall, had borrowed from her, the said Anderson.

This note, and the fund it represents, thus made and secured, and transferred, is the subject matter of this suit.

One month after the assignment of said note, the said Mary F. Hall departed this life, intestate, at Fort Wayne, Indiana, leaving as her only heirs at law, her brother and sister, J. W. Crawford and the defendant, Kate C. Anderson, and also leaving debts to various parties due and unpaid, including expenses of last sickness, funeral expenses, etc., to the amount of $290.55, which, the record shows, were afterwards paid by the defendant, Kate C. Anderson.

In September afterwards, the plaintiff, Harbison, was appointed administrator *de bonis non*, with the will annexed, of the estate of said Bartlett M. Hall, deceased, by the probate court of Jackson county, Missouri, and thereupon commenced this suit against the said J. Crawford James, Kate C. Anderson, and her husband, Samuel Anderson, for the recovery of said promissory note, and the fund represented thereby, claiming, in his petition, that the same belonged to the estate of said B. M. Hall, for whose interest, and the interest of said legatees, Mary Davis, Annie Harbison, and Amelia Wilson, this suit was brought, and also claiming that by the terms of said will the testator's wife, Mary F. Hall, had only the right and power to sell and reinvest said estate, or any part thereof, for the benefit of said estate, and the

legatees named, without the power of absolute disposal of the same; and that she only had the right to the interest or usufruct arising from said estate during her life, for her personal support and maintenance, and that, at her death, all of said estate remaining and undisposed of, was to go to and be divided, according to the terms of the will, among the daughters of the testator above named.

The petition also charges that said Mary F. Hall did not use or make any disposition of said fund represented by said James' note during her lifetime, by which plaintiff is precluded from recovering the same; and that said widow had no power or right to absolutely dispose of the same to any one; that said widow owed no debts for which said fund was, or could be, pledged, or for which it is or can in any way be held liable, and that she had no right or power to pledge or mortgage said fund, or any evidence of debt made or executed, representing said fund. The petition also charges that defendant, James, though requested, has refused to pay said sum of $3,750, with interest, to the plaintiff, and that the same is now owing the plaintiff for the use aforesaid. The petition further charges that the defendant, Kate C. Anderson, makes some claim to own, or be interested in, said note and fund; but plaintiff charges the same to be fraudulent, wrongful, and invalid, and arising from, and supported by, divers illegal and inequitable practices, influences, and devices; and that she took the same with notice that the fund belonged to plaintiff's testator; and in order that she may show to the court her said claim, and have her right thereto, if any, adjudicated, she and her husband are made parties hereto. Wherefore plaintiff prays judgment against said Kate C. Anderson, that she may be barred and precluded from any claim, right, or interest in the fund in question, and that judgment be rendered against the defendant, James, for said sum of

$3,750, and interest, and for such further relief as the court may deem fit in the premises.

After the commencement of the suit James F. Mister was, by the probate court of Jackson county, Missouri, appointed administrator of the estate of said Mary F. Hall, deceased, and was made party defendant, and in his answer claims that under the will his intestate became the absolute owner in fee of said promissory note and said fund; and that at her death the same, subject to the payment of her debts, descended to her brother and sister, J. W. Crawford and the defendant, Kate C. Anderson; and that said devisees of said testator have no interest or title thereto; that the limitation over in remainder is void; and, therefore, asks judgment that defendant, James, pay the money to him as administrator of said Mary F. Hall, deceased.

The defendant, James, in his answer, admits the loan of said $3,750 to him by the said Mary F. Hall, the execution of said note, and deed of trust therefor; but says that he has made various payments thereon, and that the amount due and unpaid at the date of filing his answer, including all interest, was $3,345; that his co-defendant, Kate C. Anderson, has possession of said note and deed of trust, and claims to own the same; that the plaintiff also claims it, and that he does not know to whom the same belongs; but that he is willing, and asks that he may be allowed, to pay the same into court, and that his co-defendant, Anderson, may be required to bring the note and deed of trust into court; and that the same be declared paid and satisfied by proper entry of record, and the money be paid over to whomsoever the court shall adjudge the same to belong, and for all proper relief. The defendant, Kate C. Anderson, in the first count of her answer, admits the execution and probate of said will, and says that Mary F. Hall qualified as executrix, and duly and fully administered said estate, and did so in compliance with the

terms of said will. She also admits the execution of the promissory note and deed of trust by defendant, James, to Mrs. Hall, for the borrowed money mentioned; but denies that the money so borrowed came from the Hall estate. She further says that on the twenty-third of June, 1879, the said Mary F. Hall was indebted to her in the sum of $2,500, for money by her loaned to said Mary, and for moneys by her paid out for said Mary, at her instance and request; and that on the day and year last aforesaid, the said Mary F. Hall assigned and transferred to her, said note and deed of trust, to secure the payment of said $2,500; and that she now holds and owns the same to the extent of the sum so borrowed by said Mary; and that the same and interest thereon is still due and unpaid; and that the said Mary F. Hall thereby duly disposed of said note and fund in her lifetime, and shortly thereafter died intestate; and that at the time of her death she was indebted to this defendant in the further sum of five hundred dollars, and interest thereon, for moneys paid out by her in the payment of the expenses of the last sickness and funeral expenses of said Mary, and which she is entitled to have and hold out of the balance of said note; and that, in addition thereto, this defendant and her brother, J. W. Crawford, are the only heirs at law of said Mary F. Hall, deceased.

Wherefore, she asks that plaintiff's petition be dismissed; or, if said defendant, James, is willing to pay said money to this defendant, that he be ordered so to do, and for such other and further relief as may be just and right.

And, for a second defence, said defendant says that plaintiff ought not to maintain, and is not a proper party to, this suit, because, she says, that the said estate of B. M. Hall, deceased, was fully administered by said Mary F. Hall, and that what of said estate she received, she received under the provisions of said will; and that,

shortly before the commencement of this suit, the said
Mary F. Hall died, a resident of the state of Indiana,
owing debts to a large amount, remaining due and un-
paid, and that, by the terms of said will of B. M. Hall,
the said Mary F. Hall took the absolute property of
whatever she received from said estate; and that his
alleged legatees, for whom this suit is brought, have no
interest in the funds derived from said estate; and that,
by reason thereof, plaintiff has no right to prosecute this
suit, and is not a proper party thereto.

The reply of the plaintiff to these several answers
put in issue all the new matter therein, and re-asserted
his right as set out in the petition.

The cause was submitted to the court upon these
pleadings, and the evidence (to be hereafter noted, as
far as deemed material); whereupon the court, after due
consideration, found the issues against the plaintiff, and
rendered judgment accordingly, dismissing plaintiff's
petition, from which judgment the plaintiff, after an un-
successful motion for new trial and re-hearing, appealed
to this court.

From the foregoing statement it will be seen that
there are three parties to the controversy besides the
defendant, James:   (1) the devisees in remainder of the
testator, who are represented by the plaintiff; (2) the
heirs at law of his widow, who are represented by her
administrator; and (3) the defendant, Kate C. Anderson,
who claims the fund in question to the extent of $2,500,
by virtue of the written assignment from Mrs. Hall, to
secure her for an indebtedness on her part to that
amount.

The solution of the question, it will also be seen,
calls for the proper construction of the will in question
under the facts in evidence.   The second clause of the
will is as follows:

"2.   I give and bequeath to my beloved wife, Mary
F. Hall, all my property, including real and personal, of

any and every description whatever, giving her the right to sell and re-invest, as she may desire, any part of the same for her separate use and benefit, and at her death I desire that any portion of my estate remaining undisposed of shall go to my three daughters, Mary Davis, Annie Harbison, and Amelia Wilson."

The first branch of this clause, standing alone, would give the wife the absolute property in his entire estate. The second branch of the clause also confers upon the wife the right to sell and re-invest, as she may desire, any part of the same for her separate use and benefit. The third, and last, branch of the clause is to this effect, that the testator directed that any portion of his estate remaining undisposed of at his wife's death, should go to his three daughters, Mary Davis, Annie Harbison, and Amelia Wilson. All three of these branches of clause two, it will be seen, constitute but one entire sentence, which, taken all together, can have but one meaning. By this sentence it is manifest that the testator intended to make an ample provision for the comfort, support and maintenance of his wife during her life ; that he evidently contemplated that she might, and probably would, use and dispose of some portion of said estate for her use and benefit, and also that some portion thereof would remain undisposed of at her death, for the devisees named. The plain import of the clause, thus taken together, does not confer upon the wife the unqualified property in, or disposal of, said estate, nor does it limit her to interest or usufruct thereof, if insufficient for her comfort, support and maintenance ; yet, at the same time, the testator manifestly contemplated that some portion would remain undisposed of, at her death, and provided that whatever remained so undisposed of should go to the three children named in the will. This construction of the second clause of the will is confirmed by the further provisions of the third and fourth clauses, all tending to show the same general in-

tent of the testator. The language of Chief Justice Marshall in the case of *Smith v. Bell*, 6 Pet. 68 [31 U. S. Bk. 8 L. Ed. 322], is not inapplicable to this case, when it was held that a bequest to the testator's wife of "all my personal estate," etc., "which personal estate I give and bequeath to my said wife, to and for her own use and benefit and disposal absolutely; the remainder of said estate after her decease to be for the use of Jasper Goodwin" (the testator's son); that these words gave the remainder of said estate, after the wife's decease, to the son, with as much certainty as the preceding words gave the whole estate to the wife; that the intent to make a provision for the son was as clearly expressed upon the face of the will as that of making a provision for the wife; that if full effect is given to the latter, the former is expunged from the will; and that all the words of the will were equally the language of the testator; that the courts were not at liberty to set aside the last words of the instrument, any more than those that came earlier; that the whole will is to be taken together, and so construed as to give effect to every portion of it, if possible. The limitation in remainder shows that, in the opinion of the testator, the previous words had given only an estate for life. This was the sense in which he used them; and it was his intention to give the personal estate to his son, after the death of his mother. 2 Redf. Wills [2 Ed.] p. 345. To the same effect also is the case of *Russell v. Eubanks*, 84 Mo. 83; and also the case of *Bean v. Kenmuir*, 86 Mo. 666; s. c., 2 West. Rep. 126.

This construction, in effect, has been placed upon this identical will by the Kentucky court of appeals in the case of *Anderson v. Hall*, and *Crawford v. Hall*, 80 Ky. 91, where the defendant, Anderson, and Kentucky administrator *de bonis non* of Hall's estate, were parties. It is there declared (page 97) that "the real question is whether the express language of the will, or the necessary inference from it, leads to the conclusion that the

testator intended to create a less estate in his wife than a fee-simple," and that court held that it did, and we think correctly.  At page 96 the Kentucky court uses this further language:  "The words ' the estate remaining undisposed of shall go to my three daughters,' follow directly after the power to sell and reinvest; and, while the right to use and dispose of the estate by the wife for her comfortable support may not be limited to the income, it is manifest this testator thought he was making some provision for his children.  *  *  *  He had confidence in his wife, and believed she would use no more of his estate than was proper and necessary for her own maintenance.  We see no reason why a life tenant may not be vested with the power to sell, and with the additional power to use so much of the principal as might be necessary to maintain him.  *  *  *  This is not the case of an absolute gift, or the devise by the testator of an estate in fee to the wife, and then an attempt to defeat the devise by limitation over."  At page 99 this further language is used:  "The power of disposition in the case before us was only for the purpose of reinvestment, but, if construed otherwise, as being for the purpose of enabling the wife to use the principal of the estate, in the event her necessities demanded it, and still the children would be entitled to the estate remaining, whether of the original estate, or the estate in which it had been converted, to the extent of the investment made.  This construction harmonizes each provision of the will, and effectuates the intention of the testator to provide for both his wife and children.  It was a trust vested in the wife for them, in remainder, subject to her right to use the property for her support and maintenance during life."

We are more inclined to adopt the construction suggested in the latter part of this last quotation than that stated in the first part of it.  The power of sale or disposal, superadded to a life estate, if not exercised, does

not enlarge the life estate into the fee, and in such case the remainder over is valid, and, at the death of the life tenant, takes effect in the remainder man. *Russell v. Eubanks,* 84 Mo. 83. This is all that need be said on this branch of the case. The material question next deserving consideration is, whether the said assignment of the note and fund in question by Mrs. Hall to her sister, Mrs. Anderson, under the evidence in the cause, was a valid disposal thereof to the extent of the said indebtedness thereby secured, within the meaning of the second clause of said will. In the first place it is proper to remark, that the evidence bearing on this point conduces to show that eleven hundred dollars of the money that went into the James note was borrowed from the defendant, Kate C. Anderson, and the balance only came from the Hall estate ; that all the money realized by Mrs. Hall in her lifetime on this investment was the interest up to March 28, 1879, and six hundred and fifty dollars of the principal ; that all she realized on the Merriweather notes and Louisville real estate investment was two hundred and fifty dollars, by way of interest thereon. These three items, so far as this record shows, constitute about all of the assets of the Hall estate available to Mrs. Hall, for her comfortable support and maintenance during the ten years of her life after the death of her husband. As a matter of fact, the body of the Hall estate itself, except as above stated, is shown to have been outstanding in the Louisville and James investments at the time of her death, consequently unavailable to Mrs. Hall for her comfort, support and maintenance in the meantime. As a matter of fact, also, the evidence conduces to show that Mrs. Hall, during all the years of her widowhood, from 1871 to the time of her death, was accustomed to borrow various sums of money from her sister, Kate C. Anderson, the defendant, as her wants and necessities required. The evidence shows that she moved and dressed in good society and style ; among and not unfit-

ting the friends and relations of her husband and those of herself ; and, when not staying with her sister, Mrs. Anderson, or her friend, Mrs. McCullough, was accustomed to pay her board wherever she stopped or stayed, at hotel and elsewhere, and was accustomed at intervals to travel and visit with and among her friends and relatives, for comfort and pleasure. As a matter of fact, also, it shows that at and just prior to the assignment of the note and fund in question, the said Mary F. Hall and Mrs. Anderson had an accounting and settlement of and concerning the moneys so borrowed by the former from the latter during all these years, when it was found and agreed between them that Mrs. Hall was indebted to Mrs. Anderson in the sum of $2,500 on that account, and thereupon, for the purpose of securing the amount so due and owing, Mrs. Hall executed and delivered to Mrs. Anderson the assignment of the note and fund in question. The testimony of a number of other witnesses beside Mrs. Anderson, conduces to corroborate the fact of various loans in different amounts, at various times and places, by Mrs. Anderson to Mrs. Hall, prior to said settlement, and running back as far as 1871, aggregating quite a large sum.

On the other hand, plaintiff offered evidence designed to impeach the justness and fairness of said assignment and settlement, and tending in some particulars to contradict Mrs. Anderson ; but, after a careful consideration of all the facts and circumstances in evidence, we do not feel authorized to discredit said settlement or assignment. It is not controverted that the widow, under the will, was entitled to the interest and usufruct of her husband's said estate, and that she had the right to sell and reinvest any part of the same, as she might desire, for her separate use and benefit during her life ; and, from the construction we have placed on the will, it is also clear that she also had the right to use such part of the body of the estate, or the funds themselves, so far as

necessary for her comfort, support and maintenance during life; and, if, when the funds were thus reinvested by her, the interest thereon, or the fund itself, became, without her fault, unavailable for her support and maintenance, it will hardly be claimed that she should in the meantime remain unprovided for, or without the power and right to borrow the necessary funds for her support, and repay the money so borrowed when the same became available, and, if not available, to assign in good faith the note in question as security for the sums so borrowed.

The plaintiff's evidence was designed and tended to show, by the declaration of Mrs. Hall, her construction of the will of her husband, that she sought and strove in good faith to economize and live upon the interest of the fund, and thus preserve the estate itself, in remainder, for the children of her husband named in the will; some of this evidence also tended to show that she said, on several occasions, that she had been living on the interest, and she deemed it ample and sufficient for that purpose; or, as she expressed it on some occasions, that she had been striving and economizing so to do, and thus save every dollar of the principal for the parties for whom this suit is brought. The evidence also shows that she freely consulted and advised with her husband's children as to her investments, care and management of the funds, and took special care to keep them advised as to how and where they were invested, so that, at her death, they might have no trouble about the matter, etc. While this is so, the facts of the case themselves, as well as other declarations and acts of hers, strongly conduce to show that the funds at her command and available, whether of interest or principal, were entirely insufficient for her comfortable support and maintenance during the ten years of her life after the death of her husband, and that, in consequence thereof, she was frequently, from time to time, under the necessity of

borrowing from her sister, Mrs. Anderson, who, as the evidence tends to show, had ample means. The evidence also tends to show that Mrs. Hall made unavailing efforts to collect of the James investment to pay Mrs. Anderson moneys so borrowed, and, failing to do so, made the assignment thereof to secure the same.

One other question raised by the plaintiff remains to be noticed, and that is, he claims that, while the will gave Mrs. Hall the right and power to sell and reinvest the estate, it did not authorize her to mortgage or pledge the same to secure the money so borrowed. This objection we have considered, and, after careful examination of the authorities, we are of opinion that it is not well taken, as applied to the facts of the case. We think the case at bar is clearly distinguishable from the case of *Price v. Courtney*, 87 Mo. 387. There the power conferred was a naked power, uncoupled with an interest, the instrument used was a mortgage, the subject-matter, real estate. Here the power is coupled with an interest, the writing is not a mortgage proper, but only an assignment of a promissory note and the fund it represented. This mode of disposal does not endanger the fund in question to be sacrificed, as in the case of a mortgage of real estate, and is not within the mischief or reason of the rule recognized in the case of *Price v. Courtney, supra*.

This view of the power of disposal of the note and fund in question is more than sustained by the court of appeals in Kentucky, in construing the same will in 80 Ky., above mentioned, where it was held that a mortgage on real estate, executed by the widow to secure money borrowed to enable her to save the Louisville investment, was valid, as against these same parties. But in this case we need not and do not go to the same length in upholding the assignment of the note in question. Under this state of facts, we are of opinion, and so hold, that said assignment of said note and fund was, and is, a valid disposal thereof, to the extent of said sum of

$2,500 and the interest thereon; and that the overplus under the will belongs in remainder to the devisees named in the will, subject, however, to liabilities and debts for expenses necessarily incurred by Mrs. Hall, incident to her last sickness and burial expenses, if any such were made, and still remain due and unpaid. While the evidence on this point, however, shows that such debts to various parties did accrue to the amount of $290.55, still it appears that the defendant, Mrs. Anderson, after the death and burial of her sister, voluntarily paid the same, so that, in point of fact, said debts so due to said parties no longer exist; and, in that view, the evidence fails to show any estate of the said Mary F. Hall, or any interest her administrator has in the funds now in controversy. Whether, in an equitable proceeding like this, it would be equitable or just, as against defendant, Anderson, to allow the plaintiff to recover the amount of said indebtedness so paid, is by no means clear. The assignment of the note, as against Mrs. Hall, vested the legal title to the same in Mrs. Anderson, with a clear equitable right to $2,500 only thereof, and an equitable right to the remainder in Mrs. Hall. It would seem, therefore, that Mrs. Anderson's equity to this much of the overplus is at least equal to that of the plaintiff's; and, having the strict legal title, the familiar rule in such cases is for a court of equity to leave the parties where it finds them, and we are inclined to this view of the question, and so hold.

Under this view of the whole case, in order to settle the question and do justice to all parties, we see no reason why the trial court, under the pleadings and the evidence, might not and ought not to have permitted the defendant, James, to do as he offered—bring the balance of the money due on said note into court, and there apply it to the payment and satisfaction of his said note and deed of trust, and for the court then to order enough of the proceeds to be applied to the defendant, Kate C.

Anderson, to satisfy and discharge the said sum of $2,500 and interest thereon, as well as said $290.55 aforesaid, and remainder thereof, after payment of costs of the suit, be paid over to the plaintiff for the benefit of the parties for whom he sues, and by him forwarded to the Kentucky administrator *de bonis non* of said Bartlett M. Hall, to be there apportioned and distributed to said devisees under the will, as the proper tribunals of that state may order and direct. If, however, the said James fails or refuses to bring the money into court, as heretofore offered by him, then the trial court should render judgment against him for the balance so due, and issue execution therefor, and, upon collection, distribute the same as heretofore directed.

For this purpose and for these reasons, the judgment of the trial court dismissing the petition is reversed, and the cause remanded for further proceedings in conformity hereto. Black, J., having been of counsel, did not sit in the cause; Sherwood, J., did not sit. All the other judges concur; Henry, C. J., in the result.