MUNRO *et al.* v. COLLINS *et al.*, *Appellants.*

1. **Will, Construction of**: LIFE ESTATE. The will of a testator provided as follows : "I will and bequeath to my wife, Mary Hardesty, all the estate, real, personal, and mixed, of which I may die seized, to be held and enjoyed by her as her own, with this request, that the real estate shall be properly cared for, buildings kept in repair, and taxes promptly paid ; and, after her death, such of said property as shall then be in her possession, I request shall be given to our adopted daughter, Helen Hause, to be hers absolutely, and in the event of her marriage, to be held and enjoyed by her absolutely and free from the control or interference of her husband, and not liable to any debts or contracts of said husband. In the event of the death of said adopted daughter before my wife, the above request, in reference to the disposition of my property after my wife's death, need not be carried out towards her legal representatives ; the *bequest* extending only to such daughter, unless my wife shall so elect. If said Helen should die leaving a child or children, then I request that such of said property as shall be left after the death of my said wife shall go to such child or children in equal parts. And in the event of the death of both my wife and said Helen, leaving no children, then I direct that such of said property as shall be left shall be divided between the different orphan asylums in St. Louis in equal parts." *Held*, that, by the will, the wife took only a life estate in the property with remainder over absolutely to his adopted daughter, she surviving the wife.

2. **Trustee** : MISAPPLICATION OF TRUST FUND : LIEN. Where a trustee purchases an estate partly with his own and partly with the trust money, the *cestui que trust*, on establishing the fact, will have a lien on the whole estate for the whole amount of the trust fund thus misapplied.

*Appeal from St. Louis City Circuit Court.*—HON. G. W. LUBKE, Judge.

AFFIRMED.

*John O'Grady* and *E. B. Wolff* for appellants.

(1) It is a settled rule of American as well as English law, that when the first devisee has the absolute right to dispose of the property in his own unlimited discretion, and not a mere power of appointment among certain specified persons or classes, any estate over is void, as being inconsistent with the first gift. This exclusion of the devise over depends upon whether the first taker has the absolute right to dispose of the property. 2 Redfield on Wills, 277; *Timewell v. Perkins,* 2 A. T. K. 102; *Burbank v. Whitney,* 21 Pick. 147; *Jackson v. Coleman,* 2 John. 391; *Jackson v. Bull,* 10 John. 19; *Jackson v. Robbins,* 15 John. 169; *Melson v. Cooper,* 4 Leigh, 408; *Bernard v. Bailey,* 2 Harr. 56; *Jackson v. Delaney,* 13 John. 537; *Bland v. Bland,* 2 Cox Ch. 349; *Pushman v. Filliter,* 3 Ves. 7; *Wead v. Gray,* 78 Mo. 59. (2) Even if it should be held that a trust was imposed by the terms of the will upon the estate devised in favor of plaintiff, still such trust has been satisfied by the provisions in the will of Mrs. Collins, *née* Hardesty, in favor of plaintiff and her son.

*E. McGinnis* for respondents.

(1) The word "request," when used as it is in the will to be construed in this case, creates a valid devise over to the person named as second taker in the will. Schouler on Wills, sec. 263; *Schmucker's Estate v. Reel,* 61 Mo. 592; *Buck v. Ashbrook,* 59 Mo. 200; *Harbison v. James,* 90 Mo. 411; *Hall v. Otis,* 71 Maine, 326; *Cook v. Ellington,* 6 Jones' Eq. 371; *Wood's Estate,* 36 Cal. 75; *Knight v. Knight,* 3 Beavan, 148. (2) When a will devises property to one absolutely, and, in a subsequent clause, devises it to another upon the death of the first taker, then the first taker has only a life estate, and

the person named as second taker has the remainder. *Chiles v. Bartleson,* 21 Mo. 344 ; *Carr v. Dings,* 58 Mo. 400 ; *Bean v. Kenmuir,* 86 Mo. 666 ; *Harbison v. James,* 90 Mo. 411 ; R. S., 1879, sec. 4004 ; *Jones v. Stiles,* 19 N. J. Eq. 324 ; *Zimmerman v. Anders,* 6 Watts & Serg. 218 ; *Wheaton v. Anderson,* 23 Wend. 452 ; *Wright v. Dean,* 10 Wheat. 204 ; *Smith v. Ball,* 6 Pet. 68. (3) When a will devises real estate, money and personal property of a perishable nature, to one, and at her death, what is left of the property is to go to another person named in the will, then the words "what is left" do not confer upon the first taker a power to dispose of the property. *Foote v. Sanders,* 72 Mo. 616 ; *Green v. Hewitt,* 97 Ill. 113 ; *Giles v. Little,* 104 U. S. 291 ; *Harbison v. James,* 90 Mo. 411 ; *Read v. Watkins,* 75 Tenn. 158. (4) Money is not perishable property, and an estate for life in it is only the right to take the interest of it. *Field v. Hitch-cock,* 17 Pick. 182 ; *Burleigh v. Clough,* 52 N. H. 267 ; *Vancil v. Evans,* 4 Cold. [Tenn.] 340

BRACE, J.—The plaintiff, Mary E. Munro, whose maiden name was Mary Ellen Hellingsham, in this action seeks the aid of a court of equity in recovering certain property to which she claims to be entitled as a devisee under the will of her foster father, Frank Hardesty, and the discovery of other assets which she alleges are in the hands of defendant, Collins, to which she is entitled as such devisee. The will of said Hardesty is as follows :

"I, Frank Hardesty, of the city of St. Louis, state of Missouri, being weak in body, but of sound mind, and anxious to make such disposition of my property as to me seems proper, do make my last will and testament in manner and form following : *First.* I direct all my just debts to be paid as soon after my decease as may be consistent with the best interests of my estate.

*Second.* I will and bequeath to my wife, Mary Hardesty, all the estate, real, personal, and mixed, of which I may die seized, to be held and enjoyed by her as her own, with this request, that the real estate shall be properly cared for, buildings kept in repair, and taxes promptly paid; and, after her death, such of said property as shall then be in her possession, I request shall be given to our adopted daughter, Helen Hause, to be hers absolutely, and in the event of her marriage, to be held and enjoyed by her absolutely and free from the control or interference of her husband, and not liable to any debts or contracts of said husband. In the event of the death of said adopted daughter before my wife, the above request, in reference to the disposition of my property after my wife's death, need not be carried out toward her legal representatives, the bequest extending only to such daughter, unless my wife shall so elect. If said Helen should die leaving a child or children, then I request that such of said property as shall be left after the death of my said wife shall go to such child or children in equal parts. And in the event of the death of both my wife and said Helen, leaving no children, then I direct that such of said property as shall be left shall be divided between the different orphan asylums in St. Louis in equal parts. Lastly, I appoint my said wife, Mary Hardesty, executrix of this my last will, hereby revoking any and all former wills by me at any time made. In witness whereof I hereby set my hand and seal, this 12th day of October, 1864.

"F. HARDESTY. (Seal.)"

It was admitted on the trial that plaintiff, Mary E. Munro, is the Helen Hause named in the will. Mary Hardesty, the widow, qualified as executrix, and administered upon the estate, which consisted of real estate, notes, money in bank, and other personal property, and upon her final settlement, the probate court ordered

that the balance found to be in her hands be retained by her in pursuance of directions contained in the last will of said Hardesty. The court below, after a careful analysis of all the testimony, in connection with the settlement of Mrs. Hardesty, found that there remained in her hands of said estate on her final settlement, besides the personal property of a perishable nature, cash assets amounting to the sum of $4,366.84. The real estate cuts no figure in this controversy.

The court below held, under the provisions of the will, the widow had only a life estate in the cash assets aforesaid, and that upon her death they went to the plaintiff, Mary E. Munro. This ruling of the court is complained of as error, and presents the controlling question in the case. The appellants contending that, by the terms of the will, Mrs. Hardesty took absolutely as her own property all the estate of her deceased husband, and in support of their contention cite numerous authorities, among others, *State ex rel. v. Tolson*, 73 Mo. 320, and *Wead v. Gray*, 78 Mo. 59, upon which they strongly rely. It will not be necessary, in order to determine this question, to consult authorities outside of our own state, and in examining them, it will be well to remember that courts, in the construction of wills, endeavor never to lose sight of that leading canon: to ascertain, if possible, the true intent and meaning of the testator in any given case, as the same can be gathered from the whole context of the will, viewed in the light of the circumstances under which it was made, and aim to give effect to that meaning unless some positive legal principle forbids.

In *State ex rel. v. Tolson, supra*, the provision in the will was: "I give and devise unto my beloved niece, M. S. P., all my estate not hereinbefore devised, * * * To have and to hold and to enjoy to the only proper use and behoof of the said M. S. P. and her heirs forever. The true intent and meaning of this

devise is to give to the said M. S. P. all my estate, real, personal, and mixed  *  *  *  provided, however, that it is my will and desire that if the said M. S. P. shall die without issue, that then, in such event, the estate herein devised to her shall descend and go to W. and N." And the court held that the money in controversy in that case vested absolutely in M. S. P., and that the limitation over was void for repugnancy. In this case, it will be observed the property was devised in terms most appropriate to convey an absolute estate, and without any intention upon the part of the testator expressed, or that could be implied from the terms of the will, of creating a life estate ; but he attempted to limit the absolute estate which he devised to the devisee and her heirs forever, by a remainder contingent upon the failure of issue of her body—the limitation was repugnant to the devise, and, therefore, void.

In *Wead v. Gray, supra*, the will was as follows : "I give and bequeath to my only child, Rachel, *  *  *  all of my property, real, personal, and mixed, *  *  *  wishing my said daughter to have, use, and dispose of the same absolutely in any way that to her may seem best  *  *  *  ; it being the intention of this my last will and testament that my said daughter shall have and dispose of all my said property in her own right as absolute owner, *  *  *  and that the same and its proceeds and increase, if not disposed of and expended by her in her lifetime, shall descend at her death to her children  *  *  *  ; but if the said Rachel should die leaving no children or their descendants, and without having disposed of said property, it is then my will that out of what may remain undisposed of by her" certain legacies shall be paid. And the court held that the will vested the property absolutely in the daughter, with power to dispose of it as well by will as by deed, and having disposed of it by will, there was nothing left for the reversionary legatees.

Munro v. Collins.

Here the testatrix, in unmistakable terms, gave the property to her daughter as absolute owner, with power to dispose of it in any manner she saw fit. In the first case, the remainder was defeated, because it was an effort to limit a remainder on a fee so far as it concerned the real estate, and it could not be discovered, from the terms of the will, that it was the intention of the testator to create a life estate only in the personalty, in the immediate devisee—the terms of the devise forbade such a construction. In the second case, although the testatrix contemplated that the devisee might not exercise the absolute power which she gave her over all the property devised to her, yet in terms, having made her its absolute owner, her power over her property could not be limited by a provision inconsistent with absolute ownership.

The case at bar is distinguished from these, in that the terms used in the devise to Mrs. Hardesty do not necessarily exclude the idea of a life estate only in her; that no power of absolute disposition is expressly given to her in the will, nor is such power necessarily implied in the terms used therein,—and in that it is perfectly clear from the whole will, when read in the light of the surrounding circumstances, and considering the subject-matter of the disposition, and the intended objects of the testator's bounty, that he intended to give his wife only a life estate, with remainder absolutely to his adopted daughter if she survived his wife, and if she did not, but left child or children, then to such child or children. The testator was childless, he and his wife and his adopted daughter lived together at his home on the only real estate that he owned; his personal property consisted of notes, money, a horse, buggy, wagon, carpenter's and gardener's tools, feed, provisions, household and kitchen furniture, and other property that would perish in the using. His wife and daughter were the only persons who had any claim upon his bounty.

In his will, he set about making provision for them in case of his death, and no one can read this will and say that it was not the intention of the testator to make provision for the daughter as well as for the wife.

Yet if the construction contended for by the appellants is correct, that intention must be defeated. If the words, "to be held and enjoyed by her as her own," are to be construed as vesting in Mrs. Hardesty an absolute estate, and everything following those words in the will is to be rejected and held for naught, it is not because the testator attached such meaning to those words; the mere fact that he made the provisions following negative such a conclusion as does every word contained in them. It was not his understanding that, by the use of these words, his property was to be at the absolute disposal of his wife, for with the same penful of ink in which they were written, he expresses a desire and solicitude for its preservation, that the taxes may be paid and the buildings kept in repair, and with the next, defines the extent and duration of the estate he supposed he had given her, by providing that at her death it shall be given "to our adopted daughter to be hers absolutely." He seems to have had a proper conception of the distinction between a life estate and an absolute estate; the former he gave to his wife, the latter he gave his daughter at his wife's death. And we know of no inflexible rule of law which requires that his intention should be controlled or defeated.

The inference is sought to be drawn that the testator intended to give to his wife an absolute power of disposal of the property by the use in his will of the phrases, "such property as shall then be in her possession," and "such of said property as shall be left." No such implication arises from the use of those words in this will, since a part of the personal property devised was of a perishable nature, such as would necessarily

Munro v. Collins.

be worn out and consumed in the using, and in all probability would not be in existence at the death of his wife; the testator with a knowledge of this fact, and in contemplation of the condition of the estate when it would come into the hands of his daughter, when speaking of it in its then condition, very appropriately uses the words " such property as shall then be in her possession," " such of said property as shall be left." This is all the significance these expressions have; he uses them because, in all probability, all the property which his wife receives under the will, will not be "in her possession or left" at her death, and not because he intended that she should have the power to dispose of all the property so that none might be left. *Gregory v. Cowgill*, 19 Mo. 415; *Foote v. Sanders*, 72 Mo. 616; *Siegwald v. Siegwald*, 37 Ill. 435; *Green v. Hewitt*, 97 Ill. 113.

The intention of the testator is plain; the whole will must be read together and effect given to every clause of it, and the words used are to be understood in the sense indicated by the whole instrument. The testator's wife was to have the use and enjoyment of all of his property during her life, and at her death what had not been consumed, or lost, in that use and enjoyment, was to go to his adopted daughter. The construction put upon the will by the circuit court was correct on principle and authority. *Chiles v. Bartleson*, 21 Mo. 344; *Carr v. Dings*, 58 Mo. 400; *Bean v. Kenmuir*, 86 Mo. 666; *Harbison v. James*, 90 Mo. 411; *Smith v. Bell*, 6 Peters, 68; 37 Ill. 435; 97 Ill. 113.

Hardesty died in 1864. Mrs. Hardesty made her final settlement, as executrix of the estate, March 5, 1868, and in 1869, intermarried with the defendant, John C. Collins, and died testate July, 1881. By her last will she bequeathed to the plaintiff, Mrs. Munro, three thousand dollars, and to a son of plaintiff by a former husband, three thousand dollars, and devised and bequeathed the rest and residue of her estate of every kind to the

said defendant, Collins. She never had any children, and left as her only heirs-at-law three brothers and one sister, who are the other defendants in this case. The evidence tended to show that Mrs. Hardesty kept the money she devised from the Hardesty estate loaned out from the time of her final settlement until her marriage with Collins; after that he assumed control of it, mingled it with his and her funds, and kept the whole loaned out at a high rate of interest, payable semi-annually, secured by liens on real estate.

The business of lending the moneys was for a large portion of the time, from the marriage to the death of Mrs. Collins, conducted by Wolff & Company, real estate and loan agents, in the name of Mrs. Collins, who in the course of their transactions became the purchaser, at trustee's sale, under a deed of trust to secure one of these loans, of a lot of ground in block 63, Stoddard addition (now block 1028 of the city of St. Louis) described in the petition by metes and bounds, and received a deed therefor in her own name. The court found, at the time this purchase was made, Mrs. Collins had in her hands a sum largely in excess of $4,366.84, devised from the Hardesty estate, and that the property so purchased was acquired in part with said sum of $4,366.84 belonging to said estate, and upon the familiar principle that, "where a trustee purchases an estate partly with his own, and partly with trust money, the *cestui que trust*, upon making this showing, will have a lien on the whole estate for the whole amount of the trust fund thus misapplied," decreed, "that, unless the defendants will, within fifteen days from this date, pay into court for plaintiff, Mary E. Munro, said sum with interest to this date, in all $5,305.70 and the cost of this cause, that the title of said lot shall be divested out of them, and vested in a commissioner, to be by the court appointed, and shall be sold as real estate is sold under execution, and out of the proceeds, after paying costs,

$5,305.70 and six per cent. interest to be paid plaintiff, and the balance to defendant, Collins." The interest allowed in the decree was six per cent. from the date of the death of Mrs. Collins to the date of the decree.

The defendant, Collins, in his answer, sets up several counter-claims, one for three thousand dollars, for money loaned the plaintiff which there was no evidence to support; one for six thousand dollars, advanced by him to pay the bequests of Mrs. Collins to plaintiff, Mary E. Munro, and her son; one for seven hundred and eighteen dollars for a monument, and another for three hundred and forty-four dollars for the funeral expenses of his wife, the said Mary A. Collins, all of which was disallowed by the court, and in its action in this behalf we find no error. Of the thousands of dollars that were loaned and collected by Wolff & Company, in the name and on the account of Mrs. Collins during the ten years that the business was conducted by them, they could not tell, the trial court from the evidence could not, nor have we been able to find out, how much of it was the money of Mrs. Collins, or the Hardesty estate, and possibly no living person can tell unless it be Collins, and he did not testify. The finding of the court is, however, supported by the evidence, and its decree comes as near doing substantial justice between the parties, so far as the facts were disclosed, as can ever be hoped for in a case of this kind.

The judgment is affirmed. All concur, except Ray, J., absent.