STATE ex rel. KATHERINE FARLEY, Appellant, v. THOMAS E. WELCH et al., Respondents.

Kansas City Court of Appeals, January 5, 1914..

1. WILLS: Estate in Fee Tail: Children not in Esse: Descent: Purchase. Where a will disposed of property to a married daughter in these words: "To my beloved daughter Agnes Farley, and the heirs of her body. one-fifth part thereof," and she at the date of the will and testator's death had no children, the estate in fee tail is given to the daughter and thence, by descent, to her children, who are afterwards born, the estate being by limitation and not of purchase.

2. ————: Children in Esse: Parent: Joint Tenancy. The words of a will, "To my beloved ·daughter Agnes Farley and the heirs of her body one-fifth part thereof" of my property, and there are children, the estate is that of· the parent and children in joint tenancy by purchase.

3. ————: Estate for Life: Remainder: Personalty: Money. An estate for life to one and in remainder to others may be had in personal property including money. The contrary idea is now obsolete.

4. ————: Construction: Intention. The rule in the construction of wills is to carry out the true intent of the testator; such intent being allowed to overcome the technical meaning of legal phrases.

5. ————: Rule in Wilds' Case: Prima Facie: Intent. Though the rule is that a will bequeathing property to a daughter "and the heirs of her body" when she has no children, will give

an estate in fee tail to the daughter and thence by descent to her children born after the will and not by purchase, yet, if the will, as a whole, shows a clear intent to give a life estate to the parent, with remainder to the children, that intent will overcome the rule, and the children will take under the will by purchase and not by descent.

6. ————: Absolutely: Heirs of Her Body. Where a will bequeathed to several of the testator's children one-fiftth of his estate "absolutely," and then in providing for another (a daughter) he dropped the words and substituted the words "and the heirs of her body," she not then having any children, it showed an intent in the testator to give her a life estate only with remainder to her children afterwards born.

7. ————: Executors: Remaindermen: Duty. It is the duty of executors receiving personal estate in which there is a life estate and a remainder, to protect the interest of the remainderman so that it may not be destroyed by the one with the life interest.

8. ————: Interest: Money Due Life Tenant. The executor who has not paid money to the one having a life estate in it does not owe interest on the money to the remainderman as a part of his estate by purchase. But he will be liable for interest on the sum after the death of the person with the life estate.

9. ————: Limitations: Remainderman. The Statute of Limitations does not run against the remainderman during the existence of the life estate; and a minor remainderman has the full period of limitation after arriving at majority, in which to bring an action against an executor on his bond, which under the statute would be ten years.

Appeal from Adair Circuit Court.—*Hon. Nat. M. Shelton*, Judge.

REVERSED AND REMANDED (*with directions*).

*Higbee & Mills* for appellant.

*J. A. Cooley* for respondents.

ELLISON, P. J.—William Welch died in Adair county in 1889 leaving a large body of land and considerable personal property. He disposed of it to his children by will, probated in July of that year. One

of his children was Agnes Farley, a married daughter, to whom he gave one-fifth of his estate in these words, "To my beloved daughter, Agnes Farley, and the heirs of her body one-fifth part thereof." Agnes died in 1905, leaving these plaintiffs as her children, all born after the date of the will. The testator appointed his two sons, Walter and Thomas, executors of the will. They gave bond and afterwards Walter died, leaving his brother Thomas as sole executor. Prior to her death, Agnes conveyed her interest in the real estate to her two brothers, the executors. [Farley v. Welch, 237 Mo. 128.] The executors made settlements of the personalty with the probate court, the last one, made the 11th of September, 1893, showed a balance due the estate of $2959.32. This action was brought by Agnes' children on the 5th of July, 1911, against Thomas and the sureties on his bond for one-fifth of that balance. The judgment in the trial court was for defendants.

The third clause in the will gave the widow a child's part (one-fifth).

The fourth clause is the part principally involved. It reads as follows:

"I will that after the above bequests are complied with that the balance and residue of all my estate, real estate, personal property, choses in action, and evidences of debt of every kind, shall pass and descend equally to the following named persons: To my beloved son Walter F. Welch, one-fifth part thereof absolutely forever without condition. To my beloved daughter, Margaret C. Welch, one-fifth part absolutely. To my beloved daughter, Agnes Farley, and the heirs of her body one-fifth part thereof. And to granddaughter, Margaret Ellen Moran, one-fifth part thereof, subject to the condition that her father shall never take any part thereof, . . . And shall the said Margaret Ellen Moran die before the said age of twenty-one years, her said portion of this bequest

175 Mo. App. 20

shall pass and go equally to my said children Walter
F. Welch, Thomas E. Welch, Margaret C. Welch, and
Agnes Farley, and it is my will that my said married
daughter (Agnes) take and keep all of the legacy un-
der this will as her own separate estate to the exclu-
sion of her husband.''

It will be observed that the will disposes to Agnes
and the heirs of her body one-fifth of the whole estate
without distinction as to realty or personalty. De-
fendant's position is that its effect is to vest a life
estate in Agnes to the realty with remainder to her
children, but to the personalty, it vested an absolute
title in her, and that any interest her children had
would be by descent, and that a right of action for
such descended interest was barred by limitation when
this suit was instituted; it being said that these plain-
tiffs taking by descent were barred after one year from
the death of Agnes, under the provisions of section
1896, Revised Statutes 1909. The position of the plain-
tiff is that Agnes took a life estate only in the per-
sonalty as well as the realty with remainder to these
plaintiffs as her heirs, and hence that these plaintiffs
take by purchase directly from the testator; and since
the Statute of Limitations did not run during the ex-
istence of their mother's life estate and their minority,
their right of action is not barred.

Defendants in admitting that the will devised to
Agnes a life estate only in the land, with remainder to
these plaintiffs as ''heirs of her body,'' insist that that
results from the statute abolishing the rule in Shelley's
case and estates in fee tail as to real estate (Secs. 578,
2872, R. S. 1909), but that a like rule as to personal
property has not been questioned; and since the rule
was one of construction, the fact that it no longer exists
as to real estate, ought not to influence the construction
of a bequest of personal property; and that since the
law favors an absolute title to that class of property
on account of the inconvenience and impracticability

of limitations of ownership, a will ought not to be construed as placing such limitations upon absolute ownership, unless such plain intent appears from *additional* provisions of the will compelling such construction. In other words, defendants contend that the provision to Agnes and the heirs of her body, standing alone, gave her a title for life to the realty, but an absolute title to the personalty. In thus conceding that title to the personal estate may be limited to a life estate if the testator clearly expresses such intention, defendants point out that in the array of cases cited by plaintiffs to that effect (Riggins v. McClellan, 28 Mo. 23; Munro v. Collins, 95 Mo. 33; Schorr v. Carter, 120 Mo. 409; Armour v. Frey, 226 Mo. 646; Threlkeld v. Threlkeld, 238 Mo. 459; Zook v. Welty, 156 Mo. App. 703; 16 Cyc. 615, and authorities there cited) all of them, in independent, additional terms, or expressions, or provisions of the will, disclose a clear intention to so limit the title, a state of case which they say is not found in this will.

Chief Justice MARSHALL in Smith v. Bell, 6 Peters, 68 said, "The rule that a remainder may be limited, after a life estate in personal property, is as well settled as any other principle of our law." And this is repeated in State ex rel. v. Probate Court, 102 Minn. 268, 291, 294. And in Stallcup v. Cronleys, Trustee, 117 Ky. 547, 551, it is stated that, "While the common law originally admitted of no estate in personal property, regarding its title and its possession, as inseparable, yet that distinction has long been obsolete, and now life estates and remainders may be created in personal property. Language which would create a life estate and a reversion or remainder in lands may, with equal assurance, sever the title to personal property, giving it for a term or life to one, with the remainder to others, upon the same contingencies as land is devised, guarding always against perpetuities." It is

decided that a remainder can be created in money. [Crawford v. Clark, 110 Georgia, 729, 732.]

We have not overlooked citations by defendants on this subject, but we regard them as not authority, at this day, in this State.

So therefore if it appears from the will that the testator meant to bequeath only a life estate to his daughter Agnes, that intention must govern. The controlling influence of intention over mere technical construction whereby plain language is given a meaning contrary to common understanding, or else rendered abortive, has been frequently stated by the Supreme Court, notably in the recent case of Gibson v. Gibson, 239 Mo. 490. In that case Commissioner Roy approves the views of the Supreme Court of the United States in Smith v. Bell, supra, and quotes the following from it which may well apply to this controversy: "In the case before the court, it is, we think, impossible to mistake the intent. The testator unquestionably intended to make a present provision for his wife, and a future provision for his son. This intention can be defeated only by expunging, or rendering totally inoperative, the last clause of the will."

We are aware it has been more than once said that Smith v. Bell was not favored in this State (Foote v. Sanders, 72 Mo. 616; Wead v. Gray, 78 Mo. l. c. 65). But in Harbison v. James, 90 Mo. 411, it was fully approved, and in the Gibson case, decided as late as 1912, there is no mistaking the favor with which it was received by the Supreme Court. There is a remark in State ex rel. v. Tolson, 73 Mo. l. c. 325, that there cannot be an estate tail in chattels which do not savor of the realty and that there is no such thing as an estate tail in money. That may be granted in its technical sense. There were various ways in which such estates could be defeated and so the remainderman cut off (2 Blackstone, 116-119), which are not applicable to the character of personal property and the,

latter may be (in that sense) not capable of being entailed. But that there may be a remainder after life estate in personalty, is stated by Blackstone (2 Book, 398) and attested by the cases we have herein cited, from England and this country.

While unfortunately a testator so often expresses himself in such confusion that Coke was led to say "that wills and the construction of them, do more perplex a man than any other matter, and to make a certain construction of them, exceedeth *jurisprudentium artem,*" yet we do not think the present case puts us to that embarrassment. What are we fairly to consider was intended and accomplished by the words "To my beloved daughter Agnes Farley and the heirs of her body?" At the time that was written, and at the time it took effect at the testator's death, she had no heirs of her body—these plaintiffs being born afterwards. A rule known as the rule in Wild's case first announced in 6 Coke, 16 (b) is "that if A devises his lands to B, and to his children or issues, and he hath not any issue at the time of the devise, that the same is an estate tail; for the intent of the devisor is manifest and certain that his children or issues should take, and as immediate devisees they cannot take, because they are not in *rè rum natura,* and by way of remainder they cannot take, for that was not his intent, for the gift is immediate, therefore such words shall be taken as words of limitation; the children getting the estate by descent from the parent. The rule, as thus stated, was announced in a case involving lands, but it applies as well to personal property. [Herron v. Stokes, 12 Clark & Fennelly, 161, 181-183; Byng v. Byng, 10 H. L. C. 171.] In Clifford v. Coe, 5 App. Cases, 447, 453, it is said, " . . . but if there were not children in existence who could take concurrently with the parent, then the fee is taken by the parent, and by the children in succession after him as tenants in tail; the parent taking a fee tail in

the first instance and transmitting it according to the law of descent to all his issue until they are exhausted." In which instance the estate would be one of limitation and not purchase. But if there be children in existence, the words of the will have something to which they may immediately apply and the estate loses its character as one of limitation and it immediately becomes one of joint tenancy in the parent and children and the latter take by purchase. [Byng v. Byng, 10 H. C. L. 171, 177.

Applying this rule to the case before us, we would be compelled to hold that the words of the will gave an estate in fee tail to the testator's daughter Agnes, and unless defeated before death, in some of the ways permissible in such estates, would go in succession by descent, and not by purchase, to these plaintiffs as after-born children. And if the property were real estate, would, by force of the statute (Sec. 2872, R. S. 1909) become an estate for life in Agnes with remainder in fee simple absolute to the children. However, as the statute mentions real estate only, we need not consider it as determining the question.

But the foregoing authorities founded upon the rule in Wild's case, all concede that the rule has operative effect only in a prima facie way, and therefore it may be overcome by the intention of the testator, made to appear in the will as a whole, to bequeath a life estate to the parent with remainder to the heirs; and that brings us to the question whether such intention appears in this will. It will be observed that in giving to his children on whose interests he placed no limitation the testator has said, in each instance, that he gave the property "absolutely," and when he came to Agnes' interest he omitted that word and substituted the words "and the heirs of her body." We think this of large significance and that it should have controlling effect. It must mean that the testator did not intend that Agnes should have her share unhamp-

ered with any other interest. By that expression, connected with the preceding bequests, it clearly appears he meant something different from an ordinary bequest. He meant that she *and* her heirs were to have it; the natural sense being that she was to have it until that period when one can have heirs, that is, till her death, upon which event they would take the unfettered title. ✓

In Heron v. Stokes, 12 Clark & Fennelly, referred to above, the words of the will were "To each of my daughters, 100 1. per annum, for themselves and their children," and there were no children at the time. Lord CAMPBELL, at page 198 of the report, said that, "You would do great violence to the expressed will of the testator by entirely striking out from the words in favour of the children."

It is suggested, in opposition to these views, that no provision was made of the property in case Agnes should have no children. This may have been regarded by the testator as improbable; at any rate, it is a contingency which ought not to overcome plain evidence of intention. Nor do we think the possibility of Agnes sharing in her sister Margaret's interest shows any contrary intent to that we have stated.

The foregoing leads to the conclusion that plaintiffs should have had judgment in the trial court unless they are barred by the Statute of Limitations. We have already seen that if defendants were right in the contention that Agnes took absolute title to the personalty these plaintiffs, as her children, would be entitled to it through descent from her. But since she took only a life estate, the title in the plaintiffs, as intimated at the beginning, is under the will, by purchase (Riggins v. McClellan, 28 Mo. 23), and their cause of action did not accrue until the death of their mother, August 17, 1905. They were not entitled to the money until that time. At that time they were minors and had the usual limitation in such actions after their disa-

bility should be removed. [Sec. 1894, R. S. 1909.] And as the action is on the executor's bond, the period would be ten years. [Sec. 1888, R. S. 1909; Hall v. French, 165 Mo. 430; State ex rel. v. Brown, 208 Mo. 613, 616, 617; Elliott v. Machine Co., 236 Mo. 546, 555.] The action being instituted within that time, is not barred.

An important matter remains regarding the culpability of the executors. If they had turned over one-fifth of the personal estate to Agnes, or if in money had paid her one-fifth, a question would arise as to whether that would discharge them from the claim of these plaintiffs as remaindermen. They claim the executors were trustees for them and that they should have protected and not jeopardized their interests. On this subject the following is stated to be the law in 16 Cyc. 618b: "Where specific chattels are bequeathed for life the life tenant is entitled to the actual possession of the property, and cannot be compelled to submit to a sale or a commutation of his interest; but where personal property is included in a general residuary bequest for life it should be sold by the executor, and the interest paid to the legatee for life, and the principal kept for the remainderman, unless the will shows a contrary intention on the part of the testator. An executor should also invest a bequest for life of money, and should sell and invest the proceeds of property, the use of which is its conversion into money, or the possession of which is not essential to its beneficial enjoyment, or which is of a perishable character, unless the will shows an intention that the possession of the fund or property should be entrusted to the life tenant. The executor may, instead of selling the property, intrust it to the life tenant upon his giving a sufficient bond; but if he does so without such security and the property is consumed or wasted by the life tenant the executor will be liable to the remainderman for the injury sustained."

State ex rel. .v. Welch.

The facts in this case relieve us from the necessity of passing on the different statements of law set out in this quotation. The property involved here is money. The settlement of the executors in evidence, even though it be not a final settlement, shows, prima facie, the amount due at that time and that it had not been paid.

If paid by the executors to Agnes as owner of a life interest in it, without taking security to protect these plaintiffs as owners in remainder, we will by no means say—it is unnecessary to say—whether that would have discharged them; for we do not find in the record any substantial evidence to justify the claim that it had been paid over to her.

On the question of whether the interest to be allowed plaintiffs should run from the date of the settlement in 1893 or from the date of the death of Agnes in 1905 we have concluded on the latter date. The use and income of the money was hers. It does not appear that anyone expected that plaintiffs had a claim on the interest which should have been paid to their mother. Such interest would be due the mother and at her death would have descended to plaintiffs. It would not have been due them under the will; they would not be entitled to it by purchase, but by descent and therefore the Statute of Limitations discussed above would bar a claim for it. [Sec. 1896, R. S. 1909.]

We will therefore reverse the judgment and remand the cause with directions to enter judgment for plaintiffs for $591.86 with six per cent interest thereon from August 17, 1905, the date of their mother's death.

All concur.