## WARFIELD v. BIXBY et al.

### No. 9108.

Circuit Court of Appeals, Eighth Circuit.

Aug. 17, 1931.

Edward A. Macdonald, of Detroit, Mich., and James R. Claiborne, of St. Louis, Mo. (Edgar H. Ailes, of Detroit, Mich., Bishop & Claiborne, of St. Louis, Mo., and Miller, Canfield, Paddock & Stone, of Detroit, Mich., on the brief), for appellant.

James A. Reed, of Kansas City, Mo. (James E. Taylor and James J. McNamara, both of Kansas City, Mo., on the brief), for appellee Lucy McMillan.

John H. Holliday, of St. Louis, Mo., for appellee William K. Bixby.

Fred Armstrong, Jr., of St. Louis, Mo., for appellee Washington University.

P. Taylor Bryan and Thomas S. McPheeters, both of St. Louis, Mo., for appellees St. Louis Union Trust Co. and William K. Bixby.

Before STONE and GARDNER, Circuit Judges, and YOUMANS, District Judge.

GARDNER, Circuit Judge.

This is a suit brought by the appellant, who was plaintiff below, to set aside a written assignment made by her to Eliza McMillan and William Northrup McMillan, of one-half of her contingent interest in the estate, of William McMillan, deceased, and for an accounting. The various defendants moved to dismiss the bill for want of equity, and, these motions having been sustained by the lower court, and the plaintiff having declined to further plead, judgment of dismissal was entered, and this appeal is from that final judgment.

It appears from the bill of complaint that William McMillan died testate in 1901, leaving him surviving his widow, Eliza McMillan, and his son, William Northrup McMillan. By his will testator created a trust in favor of his surviving widow and son, conveying to them and to William K. Bixby, as trustees, his entire property in trust. During the lives of the widow and son, the entire income of the estate was to be paid over by the trustees to the widow and son, and, upon the

death of either, the survivor was to receive the entire income. It is noted that the widow and son were both trustees and beneficiaries under this trust. The will further provided that, if the son should have a lineal descendant or descendants, the property should be paid over to such descendant or descendants upon the arrival of such descendant at the age of 21 years; but, if the son should die without lineal descendants, the property was to go, upon the death of the widow, to James McMillan and Hugh McMillan, brothers of the testator, and the Union Trust Company, of Detroit, Mich., as trustees, who, in turn, were to hold and administer the same for the heirs of said James McMillan and Hugh McMillan, and on their death said property was to go to their heirs pro rata and absolutely.

Testator's brother James McMillan died in 1902, and his brother Hugh McMillan died in 1907. His widow, Eliza McMillan, died in 1915, and his son, Northrup McMillan, died in 1925. Northrup McMillan died without issue, but leaving him surviving his widow, Lucy McMillan, who is one of the defendants in this suit.

William K. Bixby, Northrup McMillan, and Eliza McMillan were also named as executors of this will, and in due time they qualified as such, administered on the estate, and at the close of the administration took over the property as trustees. These three trustees acted jointly until the death of Eliza McMillan in 1915. Thereafter Bixby and Northrup McMillan administered it until the death of Northrup McMillan in 1925.

At the time of his death, William McMillan owned a half interest in a partnership known as William McMillan and W. K. Bixby; the other partners being Eliza McMillan, William Northrup McMillan, and William K. Bixby. The business of this concern was the making of investments in stocks, bonds, car trust obligations, and other securities. The value of this interest was not inventoried by the executors, nor administered on in probate court, but it was taken possession of by William K. Bixby, Eliza McMillan, and William Northrup McMillan, as trustees of the estate of William McMillan, and was accounted for by the surviving trustee, William K. Bixby. No determination of the value of this interest of William McMillan in the partnership, nor the value of the balance of other property alleged to have been withheld from probate was ever made by the probate court. Following the death of James McMillan and Hugh McMillan, brothers of the testator, Eliza McMillan and William Northrup McMillan purchased from various of the heirs of James McMillan and Hugh McMillan the expectant interests of said heirs in the estate of William McMillan. In the year 1913 plaintiff was induced by representations made to her by Eliza McMillan, William Northrup McMillan, and William K. Bixby, to execute on October 17, 1913, a written assignment transferring and conveying an undivided one-half of her contingent interest in the William McMillan estate. That instrument is set out in the bill of complaint, and recites that the sale was for a consideration of $25,000, and contains the following other recitals:

"Whereas, the parties of the second part and William K. Bixby, of the said City of St. Louis, are Trustees under the will of William McMillan, deceased, which was duly admitted to probate in the Probate Court of the said City of St. Louis; and as such Trustees are seized and possessed of the title to the residuary property and estate devised and bequeathed to them by said will, and other property since acquired and now held by them as such Trustees; and which said trust property and estate is now of the approximate value of Eight Million Dollars ($8,000,000.00), producing an annual net income which for the past year amounted approximately to Three Hundred Fifty Six Thousand Six Hundred Eleven Dollars and Ninety Four Cents ($356,611.94).

"Whereas, a residuary interest in said trust estate was devised and bequeathed by said will to the heirs of the said Hugh McMillan in the event of and after the deaths of said Eliza McMillan and the said William Northrup McMillan without leaving any descendant surviving them; and

"Whereas, Alice Warfield, the party of the first part, wishes to realize some certain immediate benefit from said contingent devise and bequest; does not wish to take the chance of having the said Eliza McMillan and William Northrup McMillan, or some descendant of one of them, survive her, and does not in any event wish to wait until the death of the said two last named persons; and being fully advised by counsel respecting all her rights in the premises, has requested the parties of the second part to purchase one-half of her right, title and interest, present, future, vested or contingent, of every character whatsoever, as one of the heirs of the said Hugh McMillan, as well as every other right or interest which she has or may have

in the estate of said William McMillan, at and for the price hereinafter stipulated."

It is alleged that, at the time of this sale and transfer of plaintiff's contingent interest, it was the duty of the trustee to make to her a full and fair disclosure of every matter pertaining to the estate, which might have a bearing on the value of her expectant interest therein, and which might influence her in exercising her judgment as to the advisability of making such sale and assignment, but that the trustees failed to perform that duty, in that they withheld from invoice and inventory in the probate court, the sum of $750,000 which belonged to the estate, being the value of the testator's interest in the partnership above referred to, and that they withheld from her the alleged fact that Northrup McMillan was incapable of begetting a child or children, as both vendors well knew at the time of the sale, and that she sold her interest at a price far below its actual worth, on account of her ignorance of the two facts above related.

After the death of Northrup McMillan, Bixby, as sole surviving trustee, on the 18th of March, 1926, brought an equity suit in the state circuit court of the city of St. Louis, Mo., against the plaintiff in the instant case, the Union Trust Company of Detroit, as trustee of the successive trust, the St. Louis Union Trust Company, as the executor under the wills respectively of Eliza McMillan and Northrup McMillan, deceased, and certain others. In that suit brought by Bixby, he submitted his accounting as trustee, prayed for the approval of the court with respect thereto, asked for proper compensation for himself and his attorneys, and that "he be directed to pay over and distribute the remaining assets of the estate to the persons and corporations entitled thereto, and for his discharge as such trustee." Two days later suit was commenced in the same court by the Union Trust Company of Detroit, trustee of the successive trust under the McMillan will, against Bixby and others, demanding that Bixby, the St. Louis Trust Company, as executor of the will of William Northrup McMillan, and Bixby and the St. Louis Trust Company, as executors of the will of Eliza McMillan, deceased, and Bixby individually, make full accounting of the trusteeship of Eliza McMillan and William Northrup McMillan, and that the court ascertain, adjudge, and determine the respective beneficial interests of the parties thereto, and that the property be delivered in accordance therewith.

Following the institution of these suits, accountants were employed by the Union Trust Company of Detroit, the trustee of the successive trust, who made an examination of the accounts of the executors and trustees of the estate of William McMillan, and, as a result of such investigation, plaintiff in the instant case learned early in 1927 of the fact that certain property belonging to the McMillan estate had not been inventoried in the administration proceedings in the McMillan estate. Following this investigation, the Union Trust Company of Detroit, trustee of the successive trust, asserted that there was due from William K. Bixby, surviving trustee, in addition to the amount of the accounting submitted by him, a very large additional amount, and that said additional amount should be accounted for by said William K. Bixby, trustee, to the estate of William McMillan, deceased, and to the heirs of said estate. As a result of this demand, William K. Bixby paid to the Union Trust Company of Detroit, the sum of $600,000, over and above the amount included in his accounting as submitted to the court, and waived all claims to compensation as trustee.

It will be observed that plaintiff bottoms her right to recovery on the claim that the trustees of the first trust created by the McMillan will owed her the duty, before buying from her any interest in the trust estate, of fully and fairly disclosing all facts and circumstances which might have a bearing on the extent and value of her interest in the estate. It was the contention of the defendants in the lower court, and they also urge here, that no fiduciary relationship existed between the trustees under the first trust and the plaintiff, and counsel for plaintiff in their brief say: "The question of fiduciary obligation is the crux of the case. If it be true, as the defendants contend, that Eliza and Northrup had no fiduciary responsibilities in dealing with the plaintiff, the issues of res judicata and laches disappear."

It goes without saying that in fiduciary trusts the trustee is not allowed to advantage himself in dealing with the trust estate, and, while he may not be absolutely prohibited from contracting with the cestui que trust with reference to such estate, equity looks upon such a contract with suspicion, subjects it to the severest scrutiny, and will permit it to stand only when the trustee affirmatively shows that the agreement was entirely fair and advantageous to the beneficiary, and that there was no fraud, concealment, undue influence, or unconscientious

214

advantage. If, then, at the time of the purchase of plaintiff's interest by the two named trustees, the relation of trustee and cestui que trust, as to the property purchased, existed between the parties, the facts pleaded, which must for the purpose of this appeal be accepted as true, constituted a good cause of action, unless the plaintiff has elected to ratify the same with full knowledge of the facts, or is precluded by the judgment in the suit to which he was a party, brought by the surviving trustee, Bixby. It is therefore essential to determine the relation of these parties.

The will provided for two successive trusts. The first trust was in favor of the widow and son. During the existence of that trust, a fiduciary relation existed between the trustees and the widow and son, but they owed no duty to the plaintiff, nor to the trustee in the second or successive trust, except not to injure or dissipate the corpus of the estate, and to account for it to the trustee of the successive trust. In other words, as to the plaintiff and the trustee in the second trust, the trustees of the first trust were not trustees in the ordinary sense of that term, but by analogy they bore the relation of life tenants to remaindermen or reversioners.

The common law did not originally admit of the creation of a life estate in personal property with a reversion or remainder over, but it is now well settled that life estates may be created in money, as well as other personal property with remainder over to others. And it is also well settled that a future interest in personal property may take effect in analogy to a remainder after a life estate limited therein, and is then called a quasi remainder. Smith v. Bell, 6 Pet. 68, 78, 8 L. Ed. 322; State v. Welch, 175 Mo. App. 303, 162 S. W. 637; Landers Inv. Co. v. Brown, 300 Mo. 348, 254 S. W. 14, 15, 30 A. L. R. 908; Sherley v. Sherley, 192 Ky. 122, 232 S. W. 53; In re Clifton's Estate, 207 Iowa, 71, 218 N. W. 926; Hooper v. Bradbury, 133 Mass. 303.

In Smith v. Bell, supra, in an opinion by Chief Justice Marshall, it is said: "The rule that a remainder may be limited, after a life-estate in personal property, is as well settled as any other principle of our law."

In Landers Investment Co. v. Brown, supra, it is said: "It is now well settled that interests for life and in expectancy, by analogy estates, can be created in personal as well as in real property. Future interests or quasi remainders, operating in analogy to remainders or executory devises, may be created in money and other personalty, and they may be created by either deed or will, and without the intervention of a trustee."

The relation of these trustees under the first trust to the plaintiff was that of quasi life tenants to a remainderman. The relation of a life tenant to a remainderman or reversioner, is that of a quasi trustee. He is a trustee in the sense only that he must not injure or dispose of the property to the injury of the rights of the remainderman, and can do nothing during the continuance of his trust to impair the corpus of the property. But there is no fiduciary relation such as will prevent the life tenant from purchasing from the remainderman his remainder interest. Ware v. Fronk's Adm'r (Ky.) 38 S. W. 1061; Stortz v. Voss, 181 Ky. 546, 205 S. W. 610, 611.

In Ware v. Fronk's Adm'r, supra, decided by the Supreme Court of Kentucky, it is said: "We know of no principle of law or rule in equity which prevents a life tenant from purchasing the interest of a remainderman. Certainly, no such fiduciary relations exist between them which could make applicable to their transactions the rules of equity which govern trustees and cestuis que trustent."

The same court, in Stortz v. Voss, supra, in reiterating this doctrine, said: "This leaves for consideration only the two grounds contained in the original exceptions. The first of those grounds—that the purchaser, Charles W. Voss, Sr., occupied a fiduciary relation toward the owners of the property—is not founded in fact, since he had only a life interest as surviving husband in it. This in no sense made him a trustee for or a fiduciary of the owners in remainder, one of whom is the appellant."

It follows that the relation between the trustees of the first trust and the plaintiff did not prevent their purchasing from her her contingent remainder, nor was it such as to prevent them from dealing with her at arm's length.

But there are other considerations which, in our view, preclude plaintiff's right to any relief in this suit. Upon the death of Northrup McMillan without issue, the second or successive trust came into existence, and it then became the duty of the surviving trustee under the first trust to account to the trustee of the second trust for the corpus of the trust estate. Responding to this duty, Bixby filed a suit in equity in the circuit court of St. Louis, Mo., joining as defendants not only the trustee of the second trust,

but also the plaintiff, and asked for instructions as to the distribution of the estate. In that suit a decree was entered, directing such distribution, and discharging the trustee. It is urged that this decree was an adjudication of the rights of the parties here sought to be litigated, and there seems to be both reason and authority for this contention. But, however this may be, it appears that the Union Trust Company of Detroit, named as trustee in the second trust, within two days after the filing of equity suit by Bixby, brought suit against Bixby and others, demanding a full accounting of the trusteeship. These two cases were pending for nearly a year, and, as a result of the suit brought by the Union Trust Company, a settlement was made by which Bixby, as trustee, paid over some $600,000, in addition to the amount that he in his own suit admitted as due the trustee of the second trust. Now this settlement, it appears from positive allegations of the bill, was made after the plaintiff and her representative, the Union Trust Company, had ascertained all the facts which she now claims were fraudulently concealed from her at the time she made transfer of the undivided one-half interest in her contingent remainder, and which concealment she alleges constituted a fraud upon her. This was a settlement in the nature of an accord and satisfaction. It has not been repudiated nor rescinded, and amounted to a ratification of the transfer, if it were not otherwise binding upon her.

The decree appealed from should be and is affirmed.